■ DELTA PROPERTIES, INC., Respondent, v FOBARE ENTERPRISES, INC., et al., Appellants. [674 NYS2d 817] —Yesawich Jr., J. Appeal from an order of the Supreme Court (Canfield, J.), entered January 2, 1998 in Albany County, which, *inter alia*, granted plaintiff's motion for a preliminary injunction.

When defendant Fobare Enterprises, Inc. entered into a contract to sell a 3.2-acre parcel of property located in the Town of Colonie, Albany County, to Hoffman Enterprises for $333,000, plaintiff exercised its right of first refusal—previously obtained from Fobare for $10,000—to purchase the property on the same terms offered to Hoffman. Upon signing the contract of sale, plaintiff tendered the required deposit and arranged for an environmental assessment of the premises.

That review, intended to aid plaintiff in deciding whether to invoke its right to renege on the sale if the property did not conform to applicable environmental protection laws, was scheduled to be completed by June 25, 1997. The sales contract (between Fobare and plaintiff) expressly provides that in the event plaintiff does not notify Fobare that it is satisfied with the environmental status of the premises (or is willing to waive the condition), on or before that date, "this [c]ontract shall automatically be cancelled, null and void and in such event, the deposits * * * shall be immediately delivered to [plaintiff], and neither party shall have any further obligations to the other under this [c]ontract". The agreement also contains a merger clause, barring oral modifications.

When plaintiff's attorney became aware, on June 25, 1997, that the environmental consultants would not complete their review when promised, because a site visit still had to be made, she telephoned Fobare's counsel seeking to extend the contingency notice date until July 1, 1997. Fobare's attorney being out of the office, his associate granted plaintiff only a one-day extension pending her colleague's return. The next day, the site visit was conducted—with Fobare's president in attendance—and plaintiff, through counsel, again requested that the deadline for notification be extended several days to enable the consultant to complete its report. Although Fobare's counsel, when confronted with plaintiff's request, indicated only that he would discuss the matter with his client, plaintiff's counsel believed that the extension would be forthcoming, in view of plaintiff's continued willingness to close, as planned, on July 15, 1997.

By letter dated June 26, 1997 and received by plaintiff five

days later, Fobare informed plaintiff that the contract had been rendered null and void by reason of the latter's failure to tender the contingency notice in a timely fashion. In reply, plaintiff's attorney stated that her client was "willing to deem the contingency * * * satisfied", did not consider the contract canceled and was still prepared to close the deal as originally scheduled. Although they continued to correspond, each party held firm to its position, with Fobare returning plaintiff's deposit, plaintiff retendering it and Fobare rejecting it yet again, insisting that plaintiff's right to purchase the property had been terminated.

Viewed in the light most favorable to plaintiff, the evidence supports an inference that Fobare had begun negotiating with defendant Eleven ALD L.L.C., another potential buyer of the property, as early as June 26, 1997 and that Fobare may, as a result, have been seeking to avoid consummating the transaction with plaintiff. In any event, Fobare sold the subject property to Eleven (purportedly as assignee of Hoffman's rights under the initial contract of sale) on August 14, 1997, and shortly thereafter plaintiff commenced this proceeding seeking, *inter alia*, specific performance of its sales contract. Plaintiff also filed a lis pendens and, by order to show cause, sought a preliminary injunction barring alteration or resale of the property pending resolution of the action. Following joinder of issue, defendants cross-moved for summary judgment. Supreme Court granted plaintiff's motion and denied defendants' cross motion, and this appeal ensued.

Defendants' cross motion should have been granted, insofar as they sought dismissal of plaintiff's third and fifth causes of action (alleging breach of the sales contract). The notice provision contained in the contingency clause—which was not, as plaintiff suggests, solely for its benefit, as it provided Fobare, well in advance of the closing date, with certainty as to whether plaintiff would invoke the condition—is unambiguous; by its plain terms both parties' contractual obligations automatically terminated when plaintiff failed to furnish the requisite notice within the time allowed for doing so (*see, Oppenheimer & Co. v Oppenheim, Appel, Dixon & Co.*, 86 NY2d 685, 695; *W.W.W. Assocs. v Giancontieri*, 77 NY2d 157, 162; *cf., Maxton Bldrs. v Lo Galbo*, 68 NY2d 373, 378). Assuming, arguendo, that the verbal, one-day extension of that deadline (to June 26, 1997), was a valid contractual modification, it is undisputed that plaintiff had not notified Fobare, on or before that date, that the environmental contingency was satisfied or that it was willing to waive its rights in this regard. Furthermore, there is

no indication that any additional extension was granted, orally or otherwise.

Plaintiff's attempt to invoke principles of equitable estoppel and bad faith (*see, e.g., McKenna v Case*, 123 AD2d 517), to avoid the clear import of these unpropitious contractual terms, is to no avail. A mere statement by an attorney that he or she will discuss the possibility of an extension with a client does not, without more, provide a basis for assuming that an extension will be forthcoming or for changing one's position in reliance thereon. And, while an obligation of good faith and fair dealing is implied in every contract, that obligation cannot be construed so broadly as to effectively nullify the other express terms of the contract (*see, Chrysler Credit Corp. v Dioguardi Jeep Eagle*, 192 AD2d 1066, 1067). In these circumstances, Fobare's insistence that plaintiff comply with the notice requirement or suffer the agreed-upon consequences of its failure to do so does not, as a matter of law, rise to the level of bad faith (*cf., Lynlil Land Dev. Corp. v Deluca*, 159 AD2d 695, 697).

Questions of fact persist, however, with respect to the remaining claims. While the first refusal contract does explicitly state that the right of first refusal will continue in full force and effect if, in a given instance, plaintiff declines to exercise it and Fobare then rejects the initial (third-party) offer, it is unclear what the parties anticipated would occur where, as here, plaintiff exercises its right and enters into a contract with Fobare, but that agreement is then terminated before the actual sale takes place (*cf., Morrison v Piper*, 171 AD2d 958, 961). That issue cannot be resolved on the record as it presently stands.

Moreover, if it is determined that the right of first refusal did not abate when plaintiff entered into the sales contract with Fobare, it will be necessary to decide whether Eleven in fact purchased the property on the same terms offered to Hoffman. Although defendants claim that the terms of the sale to Eleven were identical to those set forth in the contract between Fobare and Hoffman, the averments by Eleven's counsel that her client "assumed responsibility for the cost of any environmental clean up that may be required", and Fobare's admission that it had undertaken some remediation efforts prior to the sale, raise questions as to whether Eleven actually received the property on terms so different from those offered to Hoffman and plaintiff as to trigger plaintiff's right of first refusal with respect thereto. Consequently, summary judgment cannot be awarded on the first, second and fourth causes of action, each of which is based, in whole or in part, upon allegations that defendants breached the first refusal contract.

Lastly, we are not convinced that Supreme Court abused its discretion in granting plaintiff's request for a preliminary injunction. While it appears uncertain whether plaintiff will ultimately prevail on the merits, the other relevant factors—the danger of irreparable harm accruing to plaintiff in the absence of an injunction, and a balance of equities—militate strongly in favor of preserving the status quo pending resolution of this action (*see, Huff v C.K. Sanitary Sys.*, 246 AD2d 795). Not unimportantly, the $300,000 undertaking provided by plaintiff appears to afford defendants adequate protection.

Mikoll, J. P., Crew III, Peters and Carpinello, JJ., concur. Ordered that the order is modified, on the law, with costs, by reversing so much thereof as denied defendants' cross motion with respect to the third and fifth causes of action; cross motion granted to that extent, defendants are awarded partial summary judgment and said causes of action are dismissed; and, as so modified, affirmed.