OPINION OF THE COURT
 

 Wesley, J.
 

 In this appeal we are called upon to determine the start
 
 *648
 
 ing point for the two-year contestability period in which a life insurance carrier can deny coverage as a result of the insured’s death by suicide when the insured purchased a binder prior to issuance of the life insurance contract. We conclude that in this case the two-year contestability period runs from the start date of the policy, not the binder.
 

 Factual Background
 

 On November 19, 1991, Thomas Springer completed an application for a $200,000 five-year term life insurance policy with Allstate. He submitted a check for $79.76, the premium for two months of coverage and was given a “Receipt and Temporary Insurance Agreement”, in which Allstate agreed to provide temporary life insurance until the permanent policy was issued. The temporary insurance was to “have the same benefits, provisions and limitations and be for the same amount as the plan applied for.” Pursuant to the terms of the temporary agreement, coverage thereunder would cease when Allstate agreed to issue a policy pursuant to the application. The temporary agreement noted that “insurance will then be provided by the policy as of its start date and not by this Agreement.” According to the temporary agreement, the longest period of coverage possible was 60 days from the date of the temporary agreement.
 

 Springer underwent a medical examination and Allstate’s underwriter approved the application. At that time, his prior payment of $79.76 was credited to the premium for coverage during the first year. The policy — described as an “Indeterminate Premium Five Year Renewable and Convertible Term” policy — bore a “start date” and a “policy date” of December 14, 1991. All other dates relevant to the policy, including expiration, renewal or conversion to whole life coverage, along with premium payments, were measured from December 14, 1991. Furthermore, schedules for maximum premiums and current premiums under the policy referred to December 14, 1991 as the policy’s “effective” date. The policy contained incontestability and suicide clauses, which noted that if Springer committed suicide “within 2 years from the start date of the contract” the carrier would only pay a refund of payments made. Pursuant to the express terms of the policy, the entire insurance contract consisted exclusively of the policy, plus endorsements, and the application. Springer’s initial application for insurance was the only document attached to the policy.
 

 
 *649
 
 Tragically, Springer committed suicide on December 10, 1993, within two years from the effective date of the policy, but more than two years from issuance of the “Receipt and Temporary Insurance Agreement.” Plaintiff, Springer’s ex-wife and the policy’s beneficiary, subsequently submitted a claim for the face value of the insurance policy. Allstate denied the claim on the ground that Springer’s death was caused by suicide within two years from the start date of the policy, and tendered a check for the amount of premiums paid.
 

 Plaintiff commenced this action seeking the value of the policy. After discovery, both parties moved for summary judgment. Supreme Court granted plaintiff’s motion, reasoning that although the temporary insurance issued on November 19, 1991 stopped when the formal policy was issued on December 14, 1991, all that occurred was a transfer of coverage from the temporary agreement to a formal policy. The court concluded that the different effective dates for the temporary agreement and the formal policy created at best an ambiguity that must be construed against Allstate. Thus, the court determined that policy coverage was in force from November 19, 1991. Therefore, the two-year incontestability clause precluded Allstate from disputing coverage under the policy. The Appellate Division unanimously affirmed, without opinion, and this Court granted leave to appeal. We now reverse the Appellate Division order and dismiss the complaint.
 

 Analysis
 

 It has long been settled in this State that an insurance binder is a temporary or interim policy until a formal policy is issued (see,
 
 Ell Dee Clothing Co. v Marsh,
 
 247 NY 392, 396;
 
 Sherri v National Sur. Co.,
 
 243 NY 266, 270;
 
 Lipman v Niagara Fire Ins. Co.,
 
 121 NY 454, 457). A binder provides interim insurance, usually effective as of the date of application, which terminates when a policy is either issued or refused (see, 1 Couch, Insurance 3d § 13:1, at 13-4;
 
 see also, Malone v North Atl. Life Ins. Co.,
 
 256 AD2d 1077, 1078,
 
 Iv dismissed
 
 94 NY2d 797;
 
 Kitchen & Bath Creations v Guardian Life Ins. Co.,
 
 234 AD2d 157). A “binder does not constitute part of an insurance policy, nor does it create any rights for the insured other than during its effective period” (12A Appleman, Insurance Law and Practice § 7227, at 154). Thus, a binder is limited in time until an assessment of risk is completed by the carrier.
 

 The Receipt and Temporary Insurance Agreement issued by Allstate in this case was a binder. The language of the agree
 
 *650
 
 ment limits its effect from the date of application until the start date of the policy. Under the clear and unambiguous terms of the binder, coverage ceased when Allstate agreed to issue the policy. Coverage was then provided by the policy as of its start date. The binder provided the insured with only temporary insurance pending an investigation of his insurability, with a maximum period of coverage under the binder limited to issuance of the policy or 60 days, whichever occurred first.
 

 Plaintiff contends that Allstate created an ambiguity: the binder and the policy have different effective dates. Her argument is premised on reading the binder and policy as a single contract. We disagree. Although a continuity of coverage did exist, it was created by two distinct agreements, each with separate specified start and end dates.
 

 Plaintiff also argues that defendant has attempted to circumvent Insurance Law § 3203 (a) (3) and (b) (1) (B) by delaying the start date of the contestability period. We disagree. Insurance Law § 3203 provides:
 

 “(a) All life insurance policies * * * shall contain in substance the following provisions, or provisions which the superintendent deems to be more favorable to policyholders:
 

 “(3) that the policy shall be incontestable after being in force during the life of the insured for a period of two years from
 
 its date of issue
 
 * * *
 

 “(b) (1) A life insurance policy * * * shall not contain any provision excluding or restricting liability in the event of death caused in a certain specified manner, except as a result of:
 

 “(B) suicide within two years
 
 from the date of issue of the policy”
 
 (emphasis added).
 

 New York was the first State in the Nation to mandate incontestability clauses in life insurance policies to provide consumers with the security of knowing that their premiums were buying the protection for which they were indeed paying (see,
 
 New England Mut. Life Ins. Co. v Doe,
 
 93 NY2d 122, 128-129). The statute specifically notes that the two-year contest-ability period is measured from the date the
 
 policy
 
 is issued, not from the date of the binder. Certainly the Legislature could have chosen to measure the contestability period by the “peri
 
 *651
 
 od of coverage” when a carrier issues a binder and later extends coverage in a formal policy. However, to date, the statute measures the contestability period from the issuance date of the policy, not when the risk of interim coverage first attaches (see,
 
 Malone v North Atl. Life Ins. Co., supra,
 
 256 AD2d, at 1078;
 
 but see, American Natl. Ins. Co. v Motta,
 
 404 F2d 167, 169 [5th Cir]).
 

 Finally, Insurance Law § 3203 (a) (4) and § 3204 (a) (1) contradict plaintiffs attempt to include the binder as part of the insurance contract. Section 3203 (a) (4) provides that the policy, together with the application, constitute the entire contract between the parties if a copy of the application is attached to the policy when issued. Section 3204 (a) (1) similarly provides:
 

 “Every policy of life * * * insurance * * * delivered or issued for delivery in this state, shall contain the entire contract between the parties, and nothing shall be incorporated therein by reference to any writing, unless a copy thereof is endorsed upon or attached to the policy or contract when issued.”
 

 Additionally, the policy has an “entire contract” provision, stipulating that the policy, including any endorsements, and the application comprise the entire contract.
 

 The Receipt and Temporary Insurance Agreement was not attached to the policy when issued. The only document attached to the policy was the application. Thus, the policy and application together constituted the entire contract. The terms of the policy are clear and unambiguous; the “date of issue” for purposes of the two-year contestability and suicide periods is the policy’s start date of December 14, 1991. All other dates relevant to the policy were measured from the start date of December 14, 1991. Since the insured committed suicide within two years from this date, plaintiff is entitled only to a refund of premiums paid.
 

 Accordingly, the order of the Appellate Division should be reversed, without costs, plaintiffs motion for summary judgment denied, defendant’s cross motion for summary judgment granted and the complaint dismissed.
 

 Chief Judge Kaye and Judges Bellacosa, Smith, Levine, Ciparick and Rosenblatt concur.
 

 Order reversed, etc.