OPINION OF THE COURT
Thomas A. Stander, J.
The plaintiffs, John R. Gatti and Andrew Scharney (Gatti), *253 submit a motion seeking an order dismissing the defendants’ answers in the above-entitled action and directing partial summary judgment be entered in favor of plaintiffs and against the defendants, Alliance Group of Western New York (Alliance) and Merchants Insurance Group (Merchants), upon the ground that there is no defense to the cause of action. The plaintiffs assert two causes of action in the complaint, one for breach of the insurance contract and the other for negligence and malpractice by the defendants.
Facts
Gatti applied for property insurance through an insurance agent, Alliance Group of Western New York. The plaintiffs completed an application and paid a $300 deposit. Thereafter they were advised by the agent that there was coverage and on February 4, 1998 plaintiffs received from Alliance a binder indicating coverage with Merchants effective January 10,1998.[1] On June 30, 1998 plaintiffs sustained a loss when the roof of the building collapsed. Plaintiffs received a letter on August 8, 1998 from Merchants informing plaintiffs that Merchants did not insure the location for the loss.
Plaintiffs’ Motion for Summary Judgment
The plaintiffs seek partial summary judgment against the defendants as to liability. The defendants submit extensive affidavits relating to the circumstances surrounding the issuance of this property insurance policy as between the agent and the company; however, neither defendant raises any question of fact as to plaintiffs’ right to summary judgment on the issue of liability.
The plaintiffs’ motion for summary judgment as to liability against both defendants is granted. The motion by Alliance for summary judgment against the plaintiffs is denied.
Alliance’s Motion for Summary Judgment
The defendant, Alliance, seeks summary judgment against Merchants on the cross claims set forth against Merchants. Alliance alleges a cross claim for indemnity and/or contribution by reason of the carelessness of Merchants, and a cross claim for Merchants to be liable for any damages awarded to plaintiffs based on Merchants’ failure to properly cancel the policy issued to plaintiffs through a binder from Alliance.
Alliance accepted the application of the plaintiffs for property insurance and the $300 premium deposit for the insurance. *254 Plaintiffs, after numerous calls to Alliance, received a document entitled “Evidence of Property Insurance” on February 4, 1998. This binder of insurance states that coverage with Merchants is effective January 10, 1998 through January 10, 1999. There is a box checked on this document that states “cont. until terminated if checked.” This binder has Jim Diem’s signature at the bottom as the authorized agent of Merchants.[2]
The defendants, Alliance and Merchants, entered into an agency agreement on July 1, 1996 which gave Alliance the power and authority to “bind, issue and deliver such policies, certificates and endorsements as are authorized by the Company in the Company’s Underwriting Manuals and supplementary written instruction pertaining thereto.” Under the agency agreement the agent had an obligation to report insurance bound under its authority as an agent of Merchants within five business days after insurance coverage is effected. There is testimony from both Jim Diem for Alliance and Steven Householder of Merchants that Alliance had binding authority under the agency agreement in January 1998 for coverage to the plaintiffs effective January 10, 1998. Jim Diem also testified that he intended to bind coverage for plaintiffs in January 1998.
“It has long been settled in this State that an insurance binder is a temporary or interim policy until a formal policy is issued [citations omitted]. A binder provides interim insurance, usually effective as of the date of application, which terminates when a policy is either issued or refused * * * [A] binder is limited in time until an assessment of risk is completed by the carrier.” (Springer v Allstate Life Ins. Co., 94 NY2d 645, 649 [2000].)
The binder issued by Jim Diem, under the authority of the agency agreement, to the plaintiffs for commercial property insurance effective January 10, 1998 was a temporary or interim policy of insurance from Merchants. Relying on the common law expressed by the Court of Appeals, this binder demonstrates an interim policy of insurance from Merchants to plaintiffs, effective on January 10, 1998 until an assessment of risk is completed by the carrier and a formal policy is either issued or refused. The binder, demonstrated by the document *255 “Evidence of Property Insurance,” states that the binder is to be continued until terminated. The agency agreement authorizes the agent to bind and issue policies and requires the agent to report all insurance bound. The agency agreement recognizes that insurance coverage is effected by an agent when insurance coverage is bound by such agent.
Merchants relies on their February 6, 1998 letter from Merchants to Alliance to show that the plaintiffs’ application for insurance was declined before any policy had been issued.[3] Merchants further asserts that because there was no formal policy issued, that there exists no relationship between Merchants and plaintiffs. Also, Merchants argues that because there was no formal policy, there was nothing to cancel.
In the Springer case, the Court of Appeals states that a binder terminates when a policy is refused, and is limited in time until an assessment of risk is completed by the carrier, in this case, Merchants. The Springer case recognizes the right of the insurance company to decline coverage. However, in the instant case, Merchants had a relationship with the plaintiffs to the extent that an authorized agent, Alliance, had bound insurance coverage to the plaintiffs on behalf of Merchants. The agency agreement also indicated that coverage is effective by a binder from an authorized agent. Under the law expressed in Springer, this binder creates an interim insurance policy.
The Insurance Law requires specific procedures for canceling a policy for a commercial line of insurance:
“During the first sixty days a covered policy is initially in effect [except for bases not relevant to this case], no cancellation shall become effective until twenty days after written notice is mailed or delivered to the first-named insured at the mailing address shown in the policy and to such insured’s authorized agent or broker.” (Insurance Law § 3426 [b].)
This statute does not differentiate between an interim policy of insurance issued through a binder by an agent, and a formal policy issued by the carrier after assessing the risks involved in the application. The overall intent of Insurance Law § 3426 (b) is to provide a mechanism for an insured to be notified that *256 a policy of insurance being relied upon as providing coverage is being canceled and to give the policyholder ample time to obtain alternate insurance.
An authorized agent of Merchants issued to the plaintiffs a temporary or interim insurance policy effective January 10, 1998 and marked to continue until terminated. This binder is an interim policy. The agency agreement states that Merchants shall comply with all requirements prescribed by state statutes pertaining to individual risk cancellation, and that cancellation notices sent to the insured will also be sent simultaneously to the agent. The position of Merchants that it has no relationship with the plaintiffs is devoid of merit.
The letter of the underwriter to the agent alone is not sufficient to comply with the Insurance Law requirements for canceling a policy. There is no evidence demonstrating that Merchants ever mailed a written notice of cancellation to the plaintiffs, the first-named insured. Pursuant to section 3426 (b) no cancellation shall become effective until 20 days after written notice is sent. (See, Sinclairs Deli v Associated Mut. Ins. Co., 163 AD2d 296 [2d Dept 1990].) In this case, written notice was never mailed or delivered to the first-named insured. This court determines that there was never any cancellation of the interim policy issued to plaintiffs.
The motion by the defendant, Alliance, for summary judgment on its cross claim against Merchants to determine that the interim policy issued to the plaintiffs was never properly canceled pursuant to Insurance Law § 3426, and, therefore, the interim policy remained in effect at the time of plaintiffs’ loss on June 30, 1998, is granted.
Order
Based upon all the papers submitted in support and in opposition to these motions, upon the above decision, and after due deliberation, it is hereby ordered that the plaintiffs’ motion for partial summary judgment on the issue of liability is granted against Merchants Insurance Group and Alliance Group of Western New York; it is further ordered that the motion by the defendant, Alliance Group of Western New York, for summary judgment against the plaintiffs is denied; it is further ordered that the motion by the defendant, Alliance Group of Western New York, for summary judgment on its cross claim against Merchants to determine that the interim policy issued to the plaintiffs was never properly canceled pursuant to Insurance Law § 3426 is granted; it is further ordered that the interim policy of insurance issued to plaintiffs, effec *257 tive January 10, 1998, remained in effect at the time of plaintiffs’ loss on June 30, 1998; and it is further ordered that the motion by Alliance for summary judgment over against Merchants for any judgment that the plaintiffs may recover against Alliance is granted.

. There was a second insurance application and binder allegedly providing coverage for the same property sent by Alliance to Merchants showing an effective date of insurance of June 19, 1998.

. In June 1998 Jim Diem submitted another application and binder to Merchants showing that coverage to plaintiffs for the property in question is effective June 19, 1998. Diem testifies that this second binder and application were prepared to make sure there was no question that the plaintiffs had coverage.

. The letter of Merchants, dated February 6, 1998, returns the deposit check and application to Jim Diem at Alliance and declines the application of the plaintiffs as incomplete. This letter also states that if the application and deposit are not received back within two weeks, then the Merchants file will be closed and they will assume the policy is no longer needed.