OPINION OF THE COURT
Charles Edward Ramos, J.
This is a declaratory judgment action brought to resolve a controversy regarding insurance coverage for numerous securities fraud lawsuits brought by individuals, classes of individuals and regulators against the Xerox Corporation and many of its present and former directors and officers based on their alleged fraudulent reporting of Xerox’s finances from 1997 through 2000.[1] In this action, plaintiff National Union Fire Insurance Company of Pittsburgh, Pa. contends that the directors and officers insurance policy it issued to Xerox does not afford coverage to defendants with respect to these lawsuits, and/or that the policy should be rescinded based on the failure to satisfy a condition precedent, fraudulent inducement and/or the doctrine of good faith and fair dealing.
Defendants each seek an order, pursuant to CPLR 3211 (a) (1) and (7) and 3016 (b), dismissing the complaint, dated October 24, 2003, on the grounds that it fails to state a cause of action, is barred by the documentary evidence and that the allegations are not pleaded with requisite particularity. The lead *765 ing motion and the primary arguments in support of the motions are made by Xerox (motion sequence 002). Separate motions were also filed on behalf of inside directors Thoman and Fishbach (motion sequence 003), by inside directors Allaire, Romeril, Buehler and Tayler (motion sequence 004), by inside directors Mulcahy and Filter (motion sequence 001), and by current and former outside directors, Inman, Johnson, Jordan, Kobayashi, Kopper, Larsen, Macomber, Mitchell, Nicholas, Pepper, Russo, Seger and Theobald (motion sequence 005). All of the individual defendants adopt Xerox’s arguments, and some have added additional arguments. These five motions are consolidated for disposition.
Background
National Union is a leading provider of directors and officers liability and fiduciary insurance, and is a member of American International Group, Inc. The defendants named in this action are Xerox and several of its current and former directors and officers.
On September 17, 1999, nonparty Federal Insurance Company issued an executive protection primary insurance policy to Xerox (the Primary Policy).
National Union issued an excess policy supplementing the Primary Policy (the Policy). The Policy covered the three-year term commencing June 25, 1999, and provided excess insurance up to $25 million to the extent that the $25 million coverage under the Primary Policy is exhausted. The Policy was a renewal of a prior excess insurance policy in effect for the period from June 25, 1996 to June 25, 1999.
The Policy adopts and “follows form” with the terms and conditions of the Primary Policy, with certain exceptions not relevant to this action. The Primary Policy is a “claims-made” policy, i.e., it covers claims made during the policy period. It contains three coverage sections, including the executive liability and indemnification coverage section, the fiduciary liability coverage section and the crime coverage section. Both the executive liability and the fiduciary liability sections provide coverage for claims made during the policy period based on conduct occurring before and during the policy period.
At least two provisions in the Primary Policy pertain to “application[s]” for coverage. The executive liability and the fiduciary liability provisions both contain a section which provides:
“In granting coverage to any one of the Insureds, *766 the Company has relied upon the declarations and statements in the written application for this coverage section and upon any declarations and statements in the original written application submitted to another insurer in respect of the prior coverage . . . All such declarations and statements are the basis of such coverage and shall be considered as incorporated in and constituting part of this coverage section.”[2]
Additionally, section 10 of the general terms and conditions, as amended by endorsement 3, of the Primary Policy, provides in relevant part that “[t]his policy, together with any application and endorsements, shall constitute the entire contract of insurance.” According to Xerox, and not denied by National Union, Xerox did not submit an application, or any of its financial statements, to either National Union or Federal, in connection with the issuance of the Primary Policy or the Policy.
Six months prior to the effective date of the Policy, on January 12, 1999, National Union issued a “Binder” of coverage to Xerox. The binder provides:
“A condition precedent to coverage afforded by this binder is that no material change in the risk occurs and no submission is made to the Insurer of a claim or circumstances that might give rise to a claim between the date of this binder indicated above and the effective date [June 25, 1999].”
Xerox did not apprise National Union of any change in circumstances during the term of the binder, and the Policy, as thereafter issued by National Union, does not contain any condition precedent language analogous to that contained in the binder.
Subsequent to the issuance of the Policy, it was discovered that Xerox’s 1997 and 1998 10-K reports and its March 31, 1999 report, filed with the SEC, contained material misstatements regarding Xerox’s financial condition for the reporting periods in question.
Xerox’s alleged fraudulent actions were the basis of the SEC’s enforcement action against Xerox, which Xerox ultimately settled, without admitting or denying the allegations in the complaint, by agreeing to, among other things: (a) restate its financial statements for the years 1997 through 2000 by more than $2 billion, (b) pay a $10 million fine, and (c) “the entry of an injunction for violations of the antifraud, reporting and record-keeping provisions of the federal securities laws.”
*767 A separate SEC enforcement action was brought against several former high-ranking Xerox officers and directors in connection with these alleged fraudulent financial filings. These individuals, namely, defendants Allaire (former chairman and CEO), Thoman (former president and CEO), Romeril (former CFO), Fishbach (former controller), and Tayler (former treasurer and controller), have settled the SEC action against them by consenting to the entry of a final judgment: (a) that permanently enjoins each of them from violating various sections of the Securities and Exchange Act of 1934 and the rules promulgated thereunder (including, among others, section 10 [b] [15 USC § 78j (b)], and rule 10b-5 [17 CFR 240.10b-5] thereunder); (b) that imposes an officer and director bar against Allaire (five years), Thoman (three years), Romeril (permanent) and Fishbach (five years); (c) agreeing to the payment of civil penalties — Allaire ($1 million), Thoman ($750,000), Romeril ($1 million), Fishbach ($100,000), and Tayler ($75,000); and (d) agreeing to pay disgorgement and prejudgment interest thereon in the following approximate amounts — Allaire ($6 million, $2 million), Thoman ($4.5 million, $1.5 million), Romeril ($3 million, $1.2 million), Fishbach ($650,000, $300,000), and Tayler ($100,000, $30,000).
The judgments against these individuals each recite that the defendant “consent[s] to the entry of this Final Judgment without admitting or denying the allegations of the Complaint.” The judgments each go on to state that the disgorgement “represents] profits gained as a result of the conduct alleged in the complaint.”
In addition to the SEC actions, various private actions (including those listed in footnote 1, supra at 764) concerning the same essential events were commenced against defendants. Although the SEC actions have been concluded, the other lawsuits are still pending in the respective courts. The exact procedural status of each of these private lawsuits is not known.
Defendants sought coverage under the Policy for the SEC actions and the various lawsuits brought against them (complaint ¶¶ 7, 45).[3] In a number of letters, National Union responded to defendants’ requests by reserving its rights under the Policy “and applicable law, including the right to raise additional defenses and/or to deny coverage as appropriate” (complaint ¶ 45, exhibit 10). National Union thereafter commenced this declaratory judgment action.
*768 The Complaint
As described in greater detail below, in the first four causes of action, National Union seeks rescission of the Policy in its entirety, based on failure of a condition precedent (first cause of action), fraud (second and third causes of action) and/or breach of the implied duty of good faith and fair dealing (fourth cause of action). In the latter six causes of action, which are asserted only in the event that it is determined that National Union is not entitled to rescind the Policy, it seeks declarations of non-coverage based upon various “exclusions” contained in the Policy (the fifth and sixth causes of action), legal interpretation of the term “Loss” in the Policy (seventh cause of action), breach of the provisions in the Policy requiring consent to an insured’s settlement of an action (eighth cause of action), application of the equitable doctrine of unjust enrichment (ninth cause of action), and application of the “known loss” doctrine (tenth cause of action).
In the first cause of action, National Union seeks rescission of the Policy because “the Binder provides that a condition precedent to coverage is that there be no material change in the risk to be insured by National Union” (complaint H 48). National Union proceeds to state that:
“The Binder incorporated the terms upon which National Union was willing to insure Xerox based on the documents and information submitted to National Union by Xerox and publicly available documents and information that were issued by Xerox and relied upon by National Union in connection with Xerox’s application for insurance, [and that] publicly available documents and information issued by Xerox, particularly Xerox’s audited financial statements for the years 1997 and 1998, were material to National Union’s decision to issue the Policy to Xerox” (complaint ¶¶ 49-52).
National Union contends that there were indeed material changes in the risk to be insured, including:
“(i) that National Union was to be insuring a company that had just incurred a significant loss rather than the profitable company that Xerox represented itself to be in its financial statements;
(ii) that National Union was to be insuring a company that materially overstated its net income in its financial statements filed with the SEC and disseminated to the public; and (iii) that National *769 Union was to be insuring a company that was engaged in a systematic fraud perpetrated under the direction and supervision of its senior management” (complaint ¶ 55).
In the second cause of action, National Union asserts a right to rescission of the Policy based on fraudulent inducement. National Union accuses Xerox and/or the individual defendants of fraud for having intentionally filed materially false financial statements for 1997 and 1998, which National Union allegedly relied upon and which induced it to issue the Policy. The complaint, in relevant part, states:
“58. Xerox intentionally issued materially false financial statements to the public and filed such financial statements with the SEC for the years 1997 and 1998, among others.
“59. These false financial statements induced National Union to issue the Policy.
“60. National Union reasonably relied on Xerox’s false financial statements in determining whether to issue the Policy.”
National Union proceeds to allege that it suffered damages as a result of its reasonable reliance on Xerox’s false statements, and that, “[b]ased on the foregoing, National Union is entitled to rescission of the Policy ab initio” (complaint ¶¶ 61, 62).
The third cause of action, also for fraudulent inducement, simply refers to the prior allegations in the complaint, and alleges, in paragraph 64, that “Xerox fraudulently induced National Union to issue the Policy.”
In the fourth cause of action, National Union claims that it is entitled to rescind the Policy because “Xerox breached its obligations of good faith and fair dealing by failing to provide National Union with complete and truthful information, particularly truthful audited financial statements for 1997 and 1998, or to make the same publicly available, in connection with its applying for the Policy” (complaint 1111 68, 69).
The fifth cause of action is based on the “fraud” exclusion contained in exclusion 6 (b) of the Primary Policy.[4] National Union alleges that various actions have been commenced against *770 Xerox and its directors charging them with fraudulent conduct, and that:
“In the event that there is a judgment or final adjudication in any forum, including this lawsuit, against Xerox or any of the individual defendants of deliberate fraudulent conduct or a willful violation of any statute or regulation, there is no coverage to Xerox or such individual defendants for such acts or omissions, and any coverage that is provided under the Policy for other insureds should be reduced by the amount of those individuals’ culpability because such damages constitute uncovered loss under the Primary Policy and the Policy” (complaint ¶ 74).
This cause of action appears to be directed at all defendants.
The sixth cause of action seeks a declaration of noncoverage based on the “improper profit” exclusions contained in exclusion 6 (c) of the Primary Policy (as against an “Insured Person”), and endorsement 6 thereof (as against Xerox) which exclude coverage for losses that represent a profit or advantage gained by an insured which it was not legally entitled to receive (complaint lili 76-80).[5] National Union asserts that there is no coverage with respect to any losses claimed incurred by defendants that represent profits improperly obtained by them. This cause of action appears to be directed at all defendants.
In the seventh cause of action, National Union seeks a declaration that defendants’ alleged losses, to the extent they represent disgorgement of ill-gotten gains, would not fall within the definition of “Loss” under either the Primary Policy or the Policy, and would therefore not be covered (complaint 1HI 82-83). This cause of action appears to be directed at all defendants.
*771 In the eighth cause of action, National Union seeks a declaration of noncoverage based upon an alleged breach of the condition in section 11 of the Primary Policy of the duty to cooperate with National Union, which requires that defendants not settle or take any action adverse to the insurer’s interest without National Union’s consent (complaint 1i1i 85-86). National Union alleges that Xerox breached its duty to cooperate by settling the SEC action against it, and agreeing to pay a $10 million fine and restate its financial statements for the years 1997 to 2000, all without the consent of National Union (complaint IT 87). Although this cause of action alleges that the individual defendants also breached the duty to cooperate, it appears that National Union now wishes to continue this cause of action as against Xerox only.
In the ninth cause of action, National Union requests a declaration that any settlement or award of damages in the derivative lawsuit, for which the defendants seek coverage, would not be covered to the extent that it would result in any money paid directly or indirectly to Xerox, because such a result would otherwise provide Xerox with unjust enrichment for its own wrongdoings (complaint 1i1f 89-94).
In the tenth cause of action, National Union claims that denial of coverage for the various litigations is proper, based on application of the “known loss” doctrine insofar as the losses represent a loss known to Xerox and the individual defendants prior to commencement of the Policy (complaint ¶ 96). This cause of action appears to be directed at all defendants.
Discussion
“In considering a motion to dismiss, a court must accept as true the facts alleged in the complaint as well as all reasonable inferences that may be gleaned from those facts (McGill v Parker, 179 AD2d 98, 105 [1992]; see also Cron v Hargro Fabrics, 91 NY2d 362, 366 [1998]; Morone v Morone, 50 NY2d 481, 484 [1980]). The court is not authorized to assess the merits of the complaint or any of its factual allegations, but only to determine if, assuming the truth of the facts alleged, the complaint states the elements of a legally cognizable cause of action (see e.g. Guggenheimer v Ginzburg, 43 NY2d 268, 275 [1977]). However, factual allegations that do not state a viable cause of action, that consist of bare legal conclusions, or that are inherently incredible *772 or clearly contradicted by documentary evidence are not entitled to such consideration (Caniglia v Chicago Tribune-New York News Syndicate, 204 AD2d 233 [1994]).” (Skillgames, LLC v Brody, 1 AD3d 247, 250 [1st Dept 2003].)
“Moreover, when the motion is based upon documentary evidence, [dismissal under CPLR 3211 (a) (1) is warranted only if the documentary evidence submitted conclusively establishes a defense to the asserted claims as a matter of law” (Richbell Info. Servs. v Jupiter Partners, 309 AD2d 288, 289 [1st Dept 2003] [internal quotation marks and emphasis omitted]).
The Contract-Based Rescission Claims (First and Fourth Causes of Action)
Xerox contends that the first cause of action fails to state a claim because the alleged condition precedent relied upon by National Union is located in the binder, but not in the Policy, and there is no basis upon which to imply the condition precedent into the Policy. Xerox asserts that the provisions in the binder represent extrinsic evidence that cannot be used to alter or modify the clear terms of the Policy.
In opposition, National Union takes the position that the condition precedent language in the binder should be considered incorporated as a term of the Policy because the terms of the binder and Policy should be read together, or, alternatively, that the Policy should be reformed to include this provision based on the parties’ mutual mistake in failing to originally include it in the Policy.
As explained by the Court of Appeals:
“It has long been settled in this State that an insurance binder is a temporary or interim policy until a formal policy is issued (see, Ell Dee Clothing Co. v Marsh, 247 NY 392, 396; Sherri v National Sun Co., 243 NY 266, 270; Lipman v Niagara Fire Ins. Co., 121 NY 454, 457). A binder provides interim insurance, usually effective as of the date of application, which terminates when a policy is either issued or refused (see, 1 Couch, Insurance 3d § 13:1, at 13-4; see also, Malone v North Atl. Life Ins. Co., 256 AD2d 1077, 1078, lv dismissed 94 NY2d 797; Kitchen & Bath Creations v Guardian Life Ins. Co., 234 AD2d 157). A ‘binder does not constitute part of an insurance policy, nor does it create any rights for the insured other than during its effective period’ (12A Appleman, Insurance Law and Practice § 7227, at *773 154). Thus, a binder is limited in time until an assessment of risk is completed by the carrier.” (Springer v Allstate Life Ins. Co. of N.Y., 94 NY2d 645, 649 [2000]; see also, World Trade Ctr. Props., L.L.C. v Hartford Fire Ins. Co., 345 F3d 154, 166-167 [2d Cir 2003].)
A binder of insurance and a subsequently-issued policy constitute “two distinct agreements” particularly when the policy contains an “entire contract” provision and the binder is not attached (Springer v Allstate Life Ins. Co. of N.Y., supra, 94 NY2d at 650-651; see also, 1 Couch on Insurance 3d § 13:1 [“(a) binder is not an insurance policy, but is generally taken to be a contract providing for interim insurance effective as of the date of the application and terminating at either completion or rejection of the principal policy”]).
National Union’s position that the condition precedent term was intended to be, and should be, incorporated into the Policy is without support. None of the evidence submitted by National Union, and indeed nothing in the language of either the Policy or the binder, would tend to suggest that the parties intended to incorporate the condition precedent into the Policy or that the failure to include this term in the Policy was a result of a mutual mistake. The facts here differ from those presented in cases such as Westchester Resco Co., L.P. v New England Reins. Corp. (648 F Supp 842 [SD NY 1986], affd 818 F2d 2 [2d Cir 1987]) and Employers Commercial Union Ins. Co. v Firemen’s Fund Ins. Co. (45 NY2d 608, 612-613 [1978]), upon which National Union relies, because National Union makes only a conclusory allegation that the condition precedent was mistakenly omitted from the subsequently-issued policy, and should therefore be read into the Policy. Furthermore, a review of the actual binder language, including the language in the condition precedent to the effect that the condition applied solely to the “coverage afforded by this binder,” provides support for the proposition that the condition precedent was intended to end upon issuance of the Policy.
Nor can National Union transform this nonviable contract claim into a valid implied covenant of good faith and fair dealing claim (Triton Partners v Prudential Sec., 301 AD2d 411 [1st Dept 2003]; see also, Horowitz v New York Blood Ctr., Inc., 2003 NY Slip Op 51290[U] [Sup Ct, NY County 2003]). “While the covenant of good faith and fair dealing is implicit in every contract, it cannot be construed so broadly as effectively to nul *774 lify other express terms of a contract, or to create independent contractual rights” (Fesseha v TD Waterhouse Inv. Servs., 305 AD2d 268, 268 [1st Dept 2003], citing Berzin v W.P. Carey & Co., 293 AD2d 320, 321 [1st Dept 2002], and Delta Props, v Fobare Enters., 251 AD2d 960, 962 [3d Dept 1998]). Additionally, the cause of action is unduly vague, lacking in specificity and is conclusory (see, Sutton Assoc, v LexisNexis, 196 Misc 2d 30, 33-34 [Sup Ct, Nassau County 2003]), and is redundant of the defective contract claim (see, Triton Partners v Prudential Sec., supra; Shilkoff v 885 Third Ave. Corp., 299 AD2d 253 [1st Dept 2002]).
Accordingly, the court holds that neither the first nor the fourth cause of action states a cause of action.
Rescission Claim Based on Fraudulent Inducement (Second and Third Causes of Action)
In order to succeed on a cause of action for fraud:
“[T]he plaintiff must prove a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury (see, Channel Master Corp. v Aluminum Ltd. Sales, 4 NY2d 403; New York Univ. v Continental Ins. Co., 87 NY2d 308, 318).” (Lama Holding Co. v Smith Barney Inc., 88 NY2d 413, 421 [1996]; Lanzi v Brooks, 54 AD2d 1057, 1058 [3d Dept 1976], affd 43 NY2d 778 [1977] [required elements include “representation of a material existing fact, falsity, scienter, deception and injury”].)
To establish a fraudulent inducement claim, a plaintiff must “allege and prove that it reasonably relied on a material misrepresentation by defendant and that it suffered an injury as a result of that reliance” (Skillgames, LLC v Brody, supra, 1 AD3d at 250).
In the second cause of action, National Union claims that it was fraudulently induced into issuing the Policy by defendants. National Union submits that, in issuing the Policy, it reasonably relied upon Xerox’s financial statements, and was, to its detriment, misled and induced by Xerox and/or its directors to issue the Policy.
Defendants contend that: (a) the complaint fails to plead fraud with sufficient particularity as required by CPLR 3016 (b), and *775 (b) National Union has failed, adequately to plead two necessary elements of a fraud claim, namely, reasonable reliance and intent to induce reliance.
National Union’s reliance on Xerox’s allegedly false financial statements is contradicted by the express terms in the Policy which render such alleged reliance unreasonable as a matter of law. The Policy provides coverage for claims arising from conduct, such as the filing of false financial statements, occurring prior to the Policy period. In addition, National Union’s reliance is not supported by the terms of the Policy that provide that representations contained in the application for insurance are the basis for the coverage provided. National Union is precluded from claiming reliance on financial statements that were not part of any application upon which the Policy was issued. In fact, apparently no insurance application of any sort was submitted by Xerox.
“[T]he policy may be avoided if the concealment amounts to actual fraud; if the applicant is aware of the existence of some circumstance which he or she knows would influence the insurer in acting upon the application, good faith requires the applicant to disclose that circumstance . . . .” (69 NY Jur 2d, Insurance § 1119.) The complaint does not adequately plead that National Union was induced by Xerox to rely on its financial statements. In these circumstances, National’s position would render this policy to be “phantom” insurance.
This court also notes that, as set forth below, National Union is afforded some protection in the Policy’s fraud exclusion.
Accordingly, the court grants defendants’ motions to dismiss the second cause of action. The third cause of action, also for fraudulent inducement, is duplicative of the second cause of action, and is also dismissed.
The Fraud Exclusion (Fifth Cause of Action)
The fraud exclusion in the Policy does not apply until there is “a judgment or other final adjudication adverse to the Insured Person [that] establishes such deliberately fraudulent act or omission or willful violation.” Thus, the fraud exclusion, by its terms, cannot be invoked until there has been a formal adjudication determining that the insured engaged in fraudulent acts, omissions or other willful violations.
Xerox contends that this cause of action must be dismissed because it is premature. National Union agrees that this cause of action is not ready for determination, but asks that it instead be held in abeyance.
*776 The Court of Appeals has spoken on the topic of prematurity in this context:
“The general rule is that a declaratory judgment as to a carrier’s obligation to indemnify may be granted in advance of trial of the underlying tort action only if it can be concluded as a matter of law that there is no possible factual or legal basis on which the insurer may eventually be held liable under its policy (Spoor-Lasher Co. v Aetna Cas. & Sur. Co., 39 NY2d 875, 876; Bianco v Travelers Ins. Co., 99 AD2d 629; see, Colon v Aetna Life & Cas. Ins. Co., 66 NY2d 6, 10). Unless it can be said that on the facts of this case defense by [the insurer] of an indemnity action by [insured] or a direct action by the tort plaintiffs is an inadequate remedy, the Appellate Division’s dismissal of the declaratory judgment action was the proper result . . . .” (First State Ins. Co. v J & S United Amusement Corp., 67 NY2d 1044, 1046-1047 [1986].)
Clearly this cause of action is not ready for determination, and will likely be fully determined in the context of the various securities actions (id.). Accordingly, there is no basis to merely stay this cause of action. Instead the court grants the motion to dismiss it, but without prejudice to National Union’s right to assert this exclusion if and when there is an adjudication determining that any of the defendants engaged in fraudulent acts, omissions or other willful violations.
Improper Profits Exclusion and Definition of “Loss” (Sixth and Seventh Causes of Action)
In the sixth and seventh causes of action, National Union seeks a declaration of noncoverage based on the improper profit exclusions in the Policy, and on the ground that defendants’ alleged losses are not covered because they do not fall within the definition of “Loss” under the Policy, respectively.
Defendants move to dismiss these causes of action primarily on the ground that they are premature.
With respect to the defendants involved in, and who settled, the SEC actions, whereby they consented to disgorgement of sums, this cause of action is not premature. Specifically, the issues raised by National Union in the sixth and seven causes of action — to wit, whether the money judgments entered, by consent, against Xerox and each of the individuals in the SEC actions (i.e., Allaire, Thoman, Romeril, Fishbach, and Tayler) *777 are barred by the improper profit exclusions in the Policy, or otherwise constitute ill-gotten gains, and are not covered losses under the Policy — are clearly ripe for consideration now (see, Vigilant Ins. Co. v Credit Suisse First Boston Corp., 10 AD3d 528 [1st Dept 2004]; Reliance Group Holdings v National Union Fire Ins. Co. of Pittsburgh, Pa., 188 AD2d 47 [1st Dept 1993]; Level 3 Communications, Inc. v Federal Ins. Co., 272 F3d 908 [7th Cir 2001]).
Accordingly, the motions to dismiss the sixth and seventh causes of action are denied with respect to Xerox, Allaire, Tho-man, Romeril, Fishbach, and Tayler, to the extent that these causes of action concern the judgments and settlements in the SEC actions.[6] With respect to all other defendants, even if these causes of action might otherwise state claims, they are premature, and the motion to dismiss these causes of action are therefore granted with respect to said defendants (see, First State Ins. Co. v J & S United Amusement Corp., supra).
Exclusion for Breach of Duty to Cooperate (Eighth Cause of Action)
In the eighth cause of action, as clarified, National Union maintains that Xerox breached the duty to cooperate contained in the Policy, by failing to procure National Union’s consent in connection with Xerox’s settlement of the SEC action against it. This cause of action adequately states a claim. In denying Xerox’s motion to dismiss the eighth cause of action, the court makes no ruling on Xerox’s claim that the demand for relief in this cause of action is broader than the relief authorized under the Policy.
Unjust Enrichment Arising out of an Award in the Derivative Action (Ninth Cause of Action)
In the ninth cause of action, National Union claims that any award in the derivative lawsuit would not be covered to the extent that it would result in any money paid directly or indirectly to Xerox, because such a result would otherwise provide Xerox with unjust enrichment.
Defendants argue that this cause of action is insufficient as a matter of law, or alternatively, that it is premature.
The coverage sought by defendants, with respect to the derivative litigation, applies to coverage provided for under the *778 Policy,[7] not to Xerox, but rather to the directors and officers in actions such as the derivative action. Aaiy damages that could be assessed in the derivative litigation would be assessed, not against Xerox, but rather against the directors and officers. Thus, any claims for indemnification under the Policy would arise, not from the coverage afforded to Xerox, but rather from the coverage afforded to the directors and officers.
In opposition, National Union submits that an award of money damages paid to Xerox in the derivative action would in fact be compensation to Xerox for its own misconduct, and urges that, in “equity and good conscience,” the court should declare that any money damages paid by National Union in the derivative action should be returned to National Union. However, National Union has not provided the court with any legal support for these rather sweeping propositions, and the court can find none. Additionally, the cause of action is premature {see, First State Ins. Co. v J & S United Amusement Corp., supra). Accordingly, the court grants the motions to dismiss the ninth cause of action.
Known Loss Doctrine (Tenth Cause of Action)
In the tenth cause of action, National Union claims that, insofar as the losses for which coverage is sought represent a loss known to Xerox and/or the individual defendants prior to commencement of the Policy, defendants’ claims for coverage for the various litigations are barred, based on application of the “known loss” doctrine.
The “known loss” doctrine is based on the insurance law principle that an insured may not obtain insurance to cover a loss that is known before the policy takes effect (Stonewall Ins. Co. v Asbestos Claims Mgt. Corp., 73 F3d 1178, 1214 [2d Cir 1995], mod on other grounds 85 F3d 49 [2d Cir 1996], citing Bartholomew v Appalachian Ins. Co., 655 F2d 27, 28-29 [1st Cir 1981]). Traditionally, “the classic statement of the defense is the observation that first-party insurance cannot be validly purchased for a home that has already burned down” (Stonewall Ins. Co. v Asbestos Claims Mgt. Corp., supra, 73 F3d at 1215).
However, to be applicable, the “known loss” defense requires consideration of whether, at the time the insured bought the *779 policy (or the policy incepted), the loss, as opposed to the risk of loss, was known (id.). The “known loss” doctrine does not apply where an insured merely knows there is a risk of loss, as knowledge of a risk is the very purpose of acquiring insurance (see, City of Johnstown, N.Y. v Bankers Std. Ins. Co., 877 F2d 1146, 1152-1153 [2d Cir 1989]).
In the present case, although the complaint alleges that “the losses represent a loss known to Xerox and the individual defendants prior to the commencement of the Policy” (complaint If 96), it is obvious that defendants, at the time the Policy was issued, could have known, at most, of the risk of loss, not of the loss itself. Accordingly, the “known loss” doctrine is not applicable, and defendants’ motions to dismiss this cause of action are granted.
National Union’s Request to Replead Dismissed Causes of Action
A request to replead allegations properly dismissed pursuant to CPLR 3211 “shall not be granted unless the court is satisfied that the opposing party has good ground to support his cause of action” (CPLR 3211 [e]; see also, Ceres v Shearson Lehman Bros., 227 AD2d 222, 223 [1st Dept 1996] [leave to replead is not appropriate where “there is no reason to believe that plaintiffs could correct the deficiencies of the pleading”]). Here, with respect to those causes of action in the complaint which the court has dismissed against some or all of the defendants, National Union has not shown, nor given the court any reason to believe, that an amended pleading would correct the defects in question (see also, Zigabarra v Falk, 143 AD2d 901, 902-903 [2d Dept 1988]). Therefore, the court declines National Union’s request for leave to replead.

. These lawsuits include two enforcement actions commenced by the Securities and Exchange Commission (SEC) in the United States District Court for the Southern District of New York, one against Xerox (SEC v Xerox, Docket No. 02-CV-272789), and the second against certain of Xerox’s senior management directors (SEC v Allaire, Thoman, Romeril, Fishbach, Marchibroda and Tayler, Docket No. 03-CV-4087), both seeking redress for Xerox’s and the individual defendants’ alleged fraud on the investing public from 1997 through 2000, by disguising Xerox’s true operating performance and other maneuvers that, together, overstated earnings by approximately $1.5 billion. As discussed infra, the SEC actions have been resolved by settlement, resulting in consents and final judgments. Other lawsuits which also charge Xerox and/or its directors with wrongful/fraudulent conduct in connection with the same surrounding events include In re Xerox Sec. Litig. and Carlson v Xerox, two class actions both pending in the United States District Court for the District of Connecticut; In re Xerox Corp. Derivative Actions (Sup Ct, NY County, Index No. 114687/00), a derivative action pending in this court; Bingham v Xerox (Docket No. CV-00-0181177), an action by a former Xerox employee pending in the Connecticut Superior Court; and Florida State Bd. of Admin, v Xerox (Docket No. 02-CV-1303), pending in the United States District Court for the District of Connecticut.

. The same section also contains a “Severability” provision.

. These lawsuits are detailed in footnote 1, supra.

. Exclusion 6 (b) of the Primary Policy provides:
“The Company shall not be liable under Insuring clause 1 for Loss on account of any Claim made against any Insured Person: . . .
“(b) based on, arising from, or in consequence of any deliberately fraudulent act or omission or any willful violation of any statute or regulation by *770 such Insured Person, if a judgment or other final adjudication adverse to the Insured Person establishes such deliberately fraudulent act or omission or willful violation.”

. Exclusion 6 (c) of the Primary Policy provides:
“The Company shall not be liable under Insuring clause 1 for Loss on account of any Claim made against any Insured Person: . . .
“(c) based on, arising from, or in consequence of such Insured Person having gained in fact any personal profit, remuneration or advantage to which such Insured Person was not legally entitled.”
Endorsement 6, section 5 of the Primary Policy provides that:
“The Company shall not be hable under Insuring Clause 3 for that part of Loss, other than Defense Costs: . . .
“(b) which is based upon, arised from, or is in consequence of any Insured Organization having gained in fact any profit or advantage to which it was not legally entitled.”

. In denying Xerox’s motion to dismiss the sixth cause of action, the court makes no ruling on its claim that it is not bound by the endorsement in question.

. Section 5 (c) (i) of the Primary Policy specifically affords coverage to directors and officers for losses resulting from a claim “that is a derivative action brought or maintained on behalf of an Insured Organization by one or more persons who are not Insured Persons and who bring and maintain the Claim without the solicitation, assistance or participation of any Insured.”