WEIS, Circuit Judge, dissenting.
This is an unusual case even in the context of the confusing and often inconsistent court rulings on the Pennsylvania Motor Vehicle Financial Responsibility Law (“MVFRL”), 75 Pa.C.S.A. § 1701 et seq. In this case, a fortuitous additional insured seeks to void a coverage declaration in an insurance policy. He relies on a formalistic ground that the named insured does not espouse but instead, apparently, opposes.
The case of the additional insured, Mason Cook, rests on two theories. First, he contends that the declaration in the policy accepted by the named insured, Atlantic Express Transportation Group, setting the limits for uninsured motorist coverage of $35,000 is ineffective. He argues that result obtains because in negotiations leading to the placement of the policy, Atlantic Express did not comply with section 1734 of the MVFRL, which allows a named insured to request reduced uninsured coverage. 75 Pa.C.S.A. § 1734.
Second, Cook argues, implicitly, that as an additional insured, he has standing to raise the issue of noncompliance by the named insured. I will address this contention first.
Atlantic Express is a sophisticated business enterprise that owns or leases approximately 5,800 vehicles in its nationwide fleet. Through its broker in New Jersey, Atlantic Express secured a policy from Fire & Casualty Company of Connecticut that was delivered to Atlantic Express’ office in New York.[20] Before the broker *600 placed the insurance, an Atlantic Express officer signed a printed application form indicating the desired coverages. The portion of the form dealing with the amount of underinsured coverage indicated that $35,000 was desired. Immediately above was another block for uninsured coverage. It was blank; the record does not disclose whether that was the result of a typographical error or oversight in the process of completing the form.
The policy as issued provided bodily injury liability coverage in the amount of $1 million. Included was a declaration referring to an endorsement setting uninsured coverage at $35,000. This policy was in effect on the date of Mr. Cook’s accident.
Although the application form contained no information about inclusion of uninsured coverage, the District Court found as a fact that the parties, Atlantic Express and Fire & Casualty, intended uninsured coverage limits of $35,000 to be in effect. Fire Cas. Co. of Conn. v. Cook, 2004 WL 945138, at *3 (E.D.Pa. Apr.29, 2004) (noting that “plaintiff has established that it was the insured’s intention to request reduced UM coverage limits.”). There is no dispute that the policy as written and delivered, conformed to Atlantic Express’ desires and Fire & Casualty’s understanding.[21]
Fire & Casualty argues that the correspondence between the broker and insurance carrier, before the policy was issued, was adequate to constitute a request for reduced coverage made by Atlantic Express in compliance with section 1734 of the MVFRL. 75 Pa.C.S.A. § 1734. Cook denies that those documents met the statutory requirement of a writing signed by the named insured; therefore, he argues that the coverage limits defaulted to the applicable bodily injury liability limits of $1 million.
Cook does not have standing to challenge the alleged noncompliance of the named insured. He had nothing to do with the negotiations for the policy. He had nothing to say about the limits of the coverage and would not have been consulted if Atlantic Express decided to cease paying the premiums, or if it determined to cancel the policy in whole or in part. He had no knowledge of the parties’ intent other than the policy declaration setting $35,000 as the limit for uninsured coverage. Cook’s accident triggered his rights under the policy and those rights were defined by the written terms as they existed at that point.
The status of an additional insured differs from that of a named insured. As the Superior Court of Pennsylvania held,
“an injured person who makes a claim for uninsured motorist benefits under a policy to which he is not a signatory is in the capacity of a third-party beneficiary ... third-party beneficiaries are bound by the same limitations in the contract as the signatories of that contract. The third-party beneficiary cannot recover except under the terms and conditions of the contract from which he makes a claim.”
General Accident Ins. Co. of America. v. Parker, 445 Pa.Super. 300, 665 A.2d 502 (1995).
The Supreme Court of Pennsylvania expressed the same approach in Johnson v. Pennsylvania National Ins. Cos., 527 Pa. *601 504, 594 A.2d 296, 298 (1991), concluding that an additional insured is “in the category of a third party beneficiary. Historically, this Court has held that third party beneficiaries are bound by the same limitations in the contract as the signatories of that contract.” See also Been v. Empire Fire & Marine Ins. Co., 751 A.2d 238 (Pa.Super.Ct.2000) (barring an additional insured’s claim as a result of a rejection of coverage by the named insured.); Kimball v. Cigna Ins. Co., 443 Pa.Super. 143, 660 A.2d 1386 (1995) (concluding that a daughter who was not a named insured at the time her mother requested reduced coverage but who subsequently became a named insured was bound by her mother’s election).
Statutory requirements also affect the relationship between a named insured and an additional insured. Before 1990, insurance companies were required to provide uninsured coverage, but that mandate was changed to an option by amendments to the MVFRL. Act of Feb. 12, 1984, P.L. 26, No. 11, § 3, repealed by Act of Feb. 7, 1990, P.L. 11, No. 6. 75 Pa.C.S.A. § 1731(a) now requires only that insurers must “offer” uninsured coverage. “Purchase of uninsured motorist and underinsured motorist coverage is optional.” 75 Pa.C.S.A. § 1731(a). As the Pennsylvania Supreme Court explained, the General Assembly’s decision to make “the purchase of UM and UIM coverage optional although insurers remained obligated to offer the coverage” was “designed to enhance the ability of insurers to control costs.” Lewis v. Erie Insurance Exchange, 568 Pa. 105, 793 A.2d 143, 150-51 (2002).
This statutory shift from mandated to optional coverage is the background against which the section 1734 “request in writing” provision must be read.
In Nationwide Ins. Co. v. Buffetta, 230 F.3d 634 (3d Cir.2000), we noted the significant change in the MVFRL; we stated that “Section 1734 provides that ‘a named insured may request in writing ...’” reduction below the liability limits. Id. at 639 (emphasis in original). We also noted that
“the statute, by its terms, does not require anything to be done by an insurer to permit the reduction in the amount of UIM coverage under a policy---- Unlike section 1731 [which applies to a complete rejection of coverage], section 1734 does not dictate that the opportunity for reduction, or a form to that effect be presented when a policy is issued. It merely provides that a reduction of this kind may be accomplished, but only by a writing which constitutes a request by a named insured.”
Id. Further, we stated, “[t]he statute is written in permissive terms leaving it to a named insured who may request reduced coverage.” Id. at 641.
Section 1734 does not use the word “shall” or “must,” nor does the MVFRL state that in the absence of a writing, the insurer “must” issue uninsured coverage at the liability limits. The amendments to the MVFRL might have been more specifically drawn, but the optional nature of uninsured coverage is clear. The purpose of a writing is to protect both the named insured and the insurer against disputes about the uninsured coverage. A writing obviously could forestall debate over what coverage was desired or offered.
In this case, the intention of the parties to the policy is not disputed. It is inconsistent for the additional insured, a third-party beneficiary, to have the right to override the determination of what coverage the named insured wished to provide and pay for. To grant such power in the presence of opposition by the named insured gives the additional insured rights superior to those of the named insured.
*602 The Supreme Court of Pennsylvania has a similar view in observing that the additional insured “has paid neither premiums nor any consideration for the benefits of this insurance policy. As such, it seems inequitable to permit [the additional insured] to pick and choose those contract provisions she prefers while not granting that same latitude to the named insured.” Johnson, 594 A.2d at 299.
My research has not revealed any appellate case under the MVFRL that extends standing to an additional insured to claim coverage for additional benefits despite a contrary position taken by the named insured. It is worth noting once again that section 1734 is directed only to the “named insured,” not an additional insured. To require notice to, or consent by, an additional insured under a large fleet policy for coverage decisions made by the named insured would be impractical and undesirable.
In the cases relied upon by Cook, the challenge to compliance with the statute was made by the named insured. See Nationwide Ins. Co. v. Resseguie, 980 F.2d 226 (3d Cir.1992); Motorists Ins. Cos. v. Emig, 444 Pa.Super. 524, 664 A.2d 559 (1995); Hayes v. Harleysville Mutual Ins. Co., 841 A.2d 121 (Pa.Super.Ct.2004). In those cases the named insured capitalized on mistakes made by the insurer or its agents, or relied on the lack of a signature by the named insured. That is not the case here.
Cook relies heavily on Peele v. Atlantic Express Transportation Group, Inc., 840 A.2d 1008 (Pa.Super.Ct.2003). There, the court held that the word “statutory” used in a binder written by an insurance company meant that the limits of the uninsured/underinsured coverage were the same as those of the liability limits, rather than the lower limits intended by the named insured. Peele is distinguishable in several aspects. First, it involved a binder providing interim insurance that did not specify the monetary limits on underinsured/uninsured coverage. That is a significant difference from the situation where a policy was issued, clearly stating the monetary limits. In Peele the accident occurred while the binder was in effect and had not yet been superseded by the policy. In this case, the policy had been delivered and was in effect before Cook’s accident.
Moreover, the Peele Court did not discuss the fact that the named insured had not challenged the insurer’s claim that lower limits of underinsured/uninsured coverage were desired. Peele also seemingly did not consider that the named insured was a large, highly sophisticated entity, and the negotiations for placement of a policy were quite unlike the purchase by average individuals.
I conclude that the stated limits of $35,000 in the policy apply to the dispute here and therefore the judgment of the District Court should be reversed.
As an alternate ground for reversal, I call attention to the Pennsylvania Supreme Court cases that held that there is no provision for reformation of a policy for certain violations of the MVFRL. See Salazar v. Allstate Ins. Co., 549 Pa. 658, 702 A.2d 1038 (1997); Donnelly v. Bauer, 553 Pa. 596, 720 A.2d 447 (1998).
In Salazar, the insurance company failed to give notice to the named insured upon renewal of the policy that her previous rejection of uninsured coverage would continue. The Court held that section 1791.1 of the MVFRL required such notification, but provided no express remedy. Accordingly, the insurance company was not required to grant coverage to an additional insured. In the Court’s view, the legislature had not provided any enforcement mechanism for noncompliance with the statute. Salazar, 702 A.2d at 1044.
*603 Donnelly was concerned with a statutory notification of full tort and limited tort options under section 1791.1 of the MVFRL. Although the insureds had selected the limited tort option, they sought to obtain full tort benefits after an accident on the ground that the notice they had received was incomplete. The Pennsylvania Supreme Court concluded that the notice was not in accord with the statute, but that no remedy was available. Donnelly, 720 A.2d at 454.
The Court explained that its ruling was supported by the policy underlying the enactment of the MVFRL to “stem the rising cost of insurance.... ” Id. In originally making their choice, the insureds received a “greater reduction in their premiums .... If this Court were to fashion a remedy not expressly provided for in the MVFRL, this Court would essentially contravene the cost containment policy behind the MVFRL because allowing [the insureds what] they seek would result in giving [them] something for which no individual has paid, which in trun, would result in insurance companies passing on this extra cost to all other insureds.” Id.; see also Nationwide Mutual Ins. Co. v. Heintz, 804 A.2d 1209 (Pa.Super.Ct.2002) (concluding that there is no remedy for noncompliance with notice requirement of MVFRL section 1791).
In Lewis v. Erie Insurance Exchange, 568 Pa. 105, 793 A.2d 143 (2002), the named insured and the additional insured contended that a request for reduced uninsured coverage had been improperly included on an “outright” rejection form. The Court concluded that no specific form for reducing coverage was required by the statute. Lewis, 793 A.2d at 155.
In Peele, the Court granted the additional insured coverage equivalent to that of the liability limits. The Court denied that it was “reforming” the policy, but was simply applying its terms. That is quite different from the situation here where the District Court changed the written term of the policy to substitute “$1 million for $35,000 coverage.” That is reformation, not simply interpretation.
The Pennsylvania Supreme Court made clear in Salazar and Donnelly that in enacting the MVFRL the Pennsylvania legislature was concerned not only with providing the average insurance consumer adequate information to make an informed choice, but also with halting the spiraling insurance costs in the state that affect everyone. Neither of those objectives will be met in this case by a formalistic ruling which imposes terms on the named insured and the insurer which they never intended or agreed upon. The Lewis Court stated that cost containment has been increasingly significant and the “General Assembly has been employing the vehicles of free consumer choice with greater latitude and frequency in furtherance of this objective.” Lewis, 793 A.2d at 154. The majority’s ruling here does not meet that aim.
I would reverse the Judgment of the District Court and enter Judgment in favor of the plaintiff.

. Under Pennsylvania law, an insurance policy should be interpreted in accordance with the law of the state where the policy was delivered. Crawford v. Manhattan Life Ins. Co., 208 Pa.Super. 150, 221 A.2d 877, 880-81 (1966). Because we sit in diversity, we apply the choice of law rules of the forum state. Shuder v. McDonald's Corp., 859 F.2d 266, 269 (3d Cir.1988).
In this instance, the policy was delivered in New York which suggests that New York law should be consulted for our inquiry. However, both parties conclude that there is no significant difference between New York and Pennsylvania law on contract interpretation and construction.
*600 Because both parties agree that application of the laws of New York and Pennsylvania would yield similar results, as the majority has done, I will focus my analysis on Pennsylvania’s law. This is appropriate because a Pennsylvania statute is at issue.

. In a deposition, the broker pointed out that if Atlantic Express had wanted its uninsured coverage to be the same as its liability limits of $1 million, an additional premium of $435,000 would have been required.