**BUDTEL ASSOCIATES, LP, Comptel Corp. & Budtel Comptel, LLC**

v.

**CONTINENTAL CASUALTY COMPANY and CNA Insurance Companies; and Commerce National Insurance Services, Inc. & Keith Turner**

**Appeal of Continental Casualty Company and CNA Insurancies Companies.**

Superior Court of Pennsylvania.

Filed Dec. 19, 2006.
Argued Oct. 18, 2006.

William O. Krekstein, Blue Bell, for appellant.

Jeffrey S. Nowak, Richboro, for Budtel, appellee.

Michael O. Kassak, Philadelphia, for Commerce, appellee.

BEFORE: MUSMANNO, TODD and TAMILIA, JJ.

OPINION BY TAMILIA, J.:

¶ 1 Appellants, Continental Casualty Company and CNA Insurance Companies, appeal from the April 27, 2005 Order granting appellees' motion for declaratory relief.

¶ 2 Appellee, Comptel Corporation (Comptel), was added to an insurance policy (policy) issued by appellee, Continental Casualty Company (Continental), that originally had been issued by Continental to a third party.[1] Comptel is an entity formed and existing under the laws of New Jersey. Appellee, Budtel Associates, L.P. (Budtel), is a limited partnership formed under Pennsylvania law. Record, Complaint at 2. Comptel and Budtel are both engaged in the payphone business as owners and operators.

¶ 3 On or about November 25, 2002, appellee and President of Budtel, Barry

---

1. The policy is designated as B2057995685. The record does not disclose when Comptel was added to the policy. The policy provided a coverage period of June 1, 2002 through June 1, 2003.

Shapiro, met with appellee and President of Comptel, Mark Singer, and executed a document entitled "Joint Venture Agreement Between Budtel Associates, LP and Comptel Corporation" (Agreement). Record, Complaint, Exb. B. The Agreement purported to create a new entity named Budtel Comptel, LLC (Budtel–Comptel), which was subsequently organized under the New Jersey Limited Liability Company Act.[2] *Id.* In relevant part, the Agreement provided the following:

> It is furthermore agreed that by entering into said joint venture or the termination of the joint venture shall have no impact on the ownership rights of each entity's assets and/or liabilities and that BUDTEL ASSOCIATES, LP and COMPTEL CORPORATION shall retain their individual identity, corporate officers, and employees.
>
> . . .
>
> It is furthermore agree[d] that the new entity will acquire the right to use assets, locations, pay telephones, including, but not limited to, vehicles, repair equipment such as tools and parts, offices, warehouses, employees and the like, excluding any existing liabilities of Comptel Corporation and Budtel Associates, LP.

*Id.* at 1–2.

¶ 4 On or about December 9, 2002, a pipe burst at a warehouse to which Budtel held title, resulting in approximately $50,000 in water damage to both the structure and files it contained. Record, Complaint at 6. On December 23, 2002, Comptel President Singer filed a claim with Continental under the policy issued to Comptel. Record, Complaint, Exb. D. In doing so, Singer relied on the following provision contained in the policy:

*a.* **Newly Acquired or Constructed Property**

(1) You may extend the insurance provided by this Coverage Form to apply to:

(a) Your new buildings while being built on the described premises; and

(b) Buildings you acquire at locations, other than the described premises.

Record, Complaint, Exb. A, Commercial Property Conditions, at page 4 of 16.

¶ 5 Continental responded to Singer's claim by letter of April 1, 2003. Record, Complaint, Exb. D. Continental denied Singer's claim and, in doing so, asserted Comptel had not "acquired" an interest in the warehouse by virtue of entering into the Agreement with Shapiro and Budtel. *Id.* Continental noted that it read the policy as only providing coverage, in this instance, to Comptel and, thus, because Comptel had not acquired Budtel's warehouse by virtue of the Agreement, the loss was not covered by the newly acquired property clause. *Id.*

¶ 6 On May 14, 2003, appellees commenced this action by filing a complaint seeking, *inter alia,* declaratory relief. Record, Complaint. On February 15, 2005, almost two years later and after protracted procedural maneuvering by the parties, appellees filed a motion for declaratory judgment that the loss would be covered under the newly acquired property clause. Record, No. 23. The trial court granted appellees' motion on April 13, 2005, and shortly thereafter, entered an Order granting appellants' application for a determination of finality. Appellants perfected a timely appeal in this Court and on September 15, 2005, the trial court filed an Opinion outlining its rationale for apply-

---

2. *See* N.J. Stat. Ann. § 42:2B–1 *et. seq.*

ing Pennsylvania law to the matter *sub judice* and for determining the warehouse loss was covered under the newly acquired property clause.

¶ 7 This Court recently noted our standard of review over a declaratory judgment:

We review the decision of the trial court as we would a decree in equity and set aside factual conclusions only where they are not supported by adequate evidence. We give plenary review, however, to the trial court's legal conclusions.

*Universal Health Servs. v. Pennsylvania Prop. & Cas. Guar. Ass'n,* 884 A.2d 889, 892 (Pa.Super.2005), citing *O'Brien v. Nationwide Mut. Ins. Co.,* 455 Pa.Super. 568, 689 A.2d 254, 257 (1997) (internal citations omitted).

¶ 8 Initially, appellants argue the trial court erred in applying this Commonwealth's law rather than New Jersey law.[3] In determining Pennsylvania law was applicable, the trial court applied a "significant contact and interest analysis" and noted that even though appellees were New Jersey entities, the subject property was located in Pennsylvania. Trial Court Opinion, Conahan, J., 9/15/05, at 2. The trial court further concluded a choice of law analysis was not required because there was no evidence that an actual conflict existed between Pennsylvania and New Jersey law "on the general insurance

policy construction principal [sic] acceptable in this case." *Id.*[4]

¶ 9 There is a split on the question of how we should decide a choice of law quandary involving a contract dispute. The trial court relied on a line of cases holding that the first step in a choice of law analysis under Pennsylvania law is to determine whether a conflict exists between the laws of the competing states. *Wilson v. Transp. Ins. Co.,* 889 A.2d 563, 570 (Pa.Super.2005), *quoting Ratti v. Wheeling Pittsburgh Steel Corp.,* 758 A.2d 695, 702 (Pa.Super.2000), *appeal denied,* 567 Pa. 715, 785 A.2d 90 (2001). If no conflict exists, further analysis is unnecessary. *Id.* If a conflict is found, it must be determined which state has the greater interest in the application of its law. *Id.* Weighing these interests requires a further determination as to which state had the most significant contacts or relationships with the insurance contract. *Id., citing Nationwide Ins. Co. v. West,* 807 A.2d 916, 921 (Pa.Super.2002), *citing in turn Griffith v. United Air Lines, Inc.,* 416 Pa. 1, 203 A.2d 796 (1964) (holding the strict *lex loci delicti* rule is abandoned in favor of applying a flexible approach to choice of law questions). We will refer to this rubric as the *Griffith* rule.

¶ 10 Appellants assert the general rule in Pennsylvania is that the law of the state where an insurance contract is delivered

---

3. The first issue raised by appellants in their Statement of the Questions Presented reads as follows:

Where the lower court entered a declaratory order in favor of coverage under the relevant policy of insurance based on its holding that the loss at issue was covered under the Newly Acquired or Constructed Property endorsement, must not the court's decision based on this clearly erroneous holding be reversed?

Appellants' brief at 4. Although the phrasing of this question fails to clearly state a choice

of law issue, the corresponding argument is titled simply "A. The lower court erred in holding that New Jersey law should not apply." Appellants' brief at 10.

4. Apparently, the principle to which the trial court was alluding is the principle in this Commonwealth's jurisprudence that when the language of an insurance policy is ambiguous, the ambiguity must be construed against the insurer. *See e.g., Neuhard v. Travelers Ins. Co.,* 831 A.2d 602, 604 (Pa.Super.2003) (citation omitted).

will be the law applied in construing the contract's terms by relying on a federal district court case for support *(Crawford* rule). Appellants' brief at 11, *citing Travelers Indemnity Co. v. Fantozzi,* 825 F.Supp. 80, 84 (E.D.Pa.1993), *citing in turn Crawford v. Manhattan Life. Ins. Co.,* 208 Pa.Super. 150, 221 A.2d 877 (1966) (other citations omitted). Additional support for appellants' position also can be found in a 2003 decision of this Court. *Peele v. Atlantic Express Transp. Group,* 840 A.2d 1008, 1011 (Pa.Super.2003) (citation omitted).[5]

¶ 11 After careful reflection, we conclude the spirit and weight of this Commonwealth's precedents mandate we follow the *Griffith* rule in the contract law context. While we were unable to uncover a case where our Supreme Court explicitly applies *Griffith* to a choice of law analysis centered on a contract dispute, the *Griffith* rule is based on the notion that the *lex loci*

*delicti* rule is, and has been for quite some time, obsolete as a tool for dealing with the legal realities imposed by a modern society. *Griffith, supra* at 806. This notion, in turn, is the effect of disillusionment with the most salient characteristic of the *lex loci delicti* rule—namely, a blind adherence to the laws of the place where a tort arises. To apply the *Crawford* rule would be to blindly adhere to an analogous principle—namely, the laws of the place where a contract is delivered control simply because the contract was delivered there.

¶ 12 Additionally, this Court's precedent overwhelmingly supports our adherence to the *Griffith* rule. The *Peele* Opinion is an anomaly as multiple decisions by this Court apply the *Griffith* rule to choice of law questions centered on contract disputes and, further, *Peele* is in conflict with this Court's most recent precedent, which applies the *Griffith* rule in the contract context.[6] *See Wilson, supra* at 570. Fur-

---

**5.** As appellants point out, panels of the Third Circuit Court of Appeals have also applied the *Crawford* rule, *Crawford v. Manhattan Life. Ins. Co.,* 208 Pa.Super. 150, 221 A.2d 877 (1966), to choice of law questions involving contracts and the federal district courts sitting in Pennsylvania have followed suit in some instances. *See e.g., Regents of the Mercersburg Coll. v. Republic Franklin Ins. Co.,* 458 F.3d 159, 163 (3d.Cir.2006), *citing McMillan v. State Mut. Life Assurance Co. of Am.,* 922 F.2d 1073, 1074 (3d.Cir.1990), *accord I.C.D. Indus. v. Federal Ins. Co.,* 879 F.Supp. 480, 484 (E.D.Pa.1995), *citing Jamison v. Miracle Mile Rambler, Inc.,* 536 F.2d 560, 562 fn. 1 (3d. Cir.1976), *but see contra, Melville v. Home Assurance Co.,* 584 F.2d 1306 (3d.Cir.1978), *accord Kilmer v. Connecticut Indem. Co.,* 189 F.Supp.2d 237, 244 (M.D.Pa.2002). The Third Circuit's application of the *Crawford* rule began with its analysis in *Boase v. Lee Rubber Co.,* 437 F.2d 527 (3d.Cir.1970), wherein the court of appeals noted our Supreme Court had not expressly applied the *Griffith* rule, *Griffith v. United Air Lines, Inc.,* 416 Pa. 1, 203 A.2d 796 (1964), to a contract dispute from the time the *Griffith* decision was handed down until 1970 and

that, consequently, *Crawford* was controlling law in the Commonwealth. *Boase, supra* at 530–531.

**6.** *See e.g. Wilson v. Transp. Ins. Co.,* 889 A.2d 563, 570 (Pa.Super.2005); *Sabad v. Fessenden,* 825 A.2d 682, 687 (Pa.Super.2003) (finding that the *Griffith* analysis applied to determine what state's law would govern the construction of an antenuptial agreement) (citation omitted); *Nationwide Ins. Co. v. West,* 807 A.2d 916, 921 (Pa.Super.2002), (applying the *Griffith* rule to a choice of law analysis centering on an insurance coverage dispute); *Hughes v. Prudential Lines,* 425 Pa.Super. 262, 624 A.2d 1063, 1066 fn. 2 (1993) (applying the *Griffith* rubric to a choice of law analysis centering on a contract dispute) (citations omitted); *Caputo v. Allstate Ins. Co.,* 344 Pa.Super. 1, 495 A.2d 959, 961–962 (1985) (following *Walter, infra* in a choice of law analysis centered on a contract dispute); *Nationwide Mut. Ins. Co. v. Walter,* 290 Pa.Super 129, 434 A.2d 164, 168 (1981) ("Although no Pennsylvania case clearly so holds, we think, as explained below, that the evolution of Pennsylvania conflicts decisions ineluctably leads us to the

thermore, the *Crawford* rule can be fairly subsumed by the more comprehensive *Griffith* rule because the *Crawford* rule examines a single contact (where the contract was delivered) while the *Griffith* rule, when necessary, examines all of the contacts that occurred within a contractual relationship. Consequently, we hold the *Griffith* rule controls the choice of law analysis in the contract context until this Commonwealth's Supreme Court instructs otherwise.

¶ 13 Having clarified our choice of law principles, we now turn to their application. As noted above, our first inquiry is to determine whether a conflict exists between the laws of this Commonwealth and the laws of New Jersey. *Wilson, supra* at 570.

¶ 14 Appellants concede "that both Pennsylvania and New Jersey law are similar in their interpretation of insurance policies." Appellants' brief at 11. Our research substantiates this concession and also reveals, on a more general level, there is no conflict between Pennsylvania's and New Jersey's rules of contract interpretation.[7] Consequently, we agree with the trial court that Pennsylvania contract law governs this dispute. *See* Trial Court Opinion at 2, *accord Wilson, supra* at 570.

¶ 15 The trial court found Comptel "acquired" the damaged Budtel warehouse by virtue of the provision in the Agreement whereby Comptel allegedly acquired the right to use Budtel's warehouse. Trial Court Opinion at 2–3, *citing Federated Mut. Ins. Co. v. Anderson,* 277 Mont. 134, 920 P.2d 97 (1966). The trial court further found the Budtel warehouse was covered under the newly acquired property clause because the clause was ambiguous on the issue of whether Comptel's acquisition of the right to use property subsequent to entering into the insurance contract would extend coverage to such property. Trial Court Opinion at 2, *citing* Record, Complaint, Exb. B, Joint Venture Agreement Between Budtel Associates, LP and Comptel Corporation.

¶ 16 Appellants attack these holdings by raising the following three issues, which we have renumbered for ease of disposition:

1. Regardless of the scope of the term 'acquire,' Comptel did not acquire the Stoudt Road Property.

2. The extended policy coverage for 'newly acquired or constructed property' is unambiguous and is clearly not applicable to the instant loss.

3. No additional premium was paid for the extended coverage; therefore, the

conclusion that the *Griffith* approach will be employed in contract actions when the occasion arises."), *quoting Melville,* 584 F.2d at 1311.

7. *See e.g., Ins. Adjustment Bureau Inc. v. Allstate Ins. Co.,* 588 Pa. 470, 905 A.2d 462, 468–469 (2006) ("The fundamental rule in contract interpretation is to ascertain the intent of the contracting parties. In the case of a written contract, the intent of the parties is the writing itself. Under ordinary principles of contract interpretation, the agreement is to be construed against its drafter. When the terms of a contract are clear and unambiguous, the intent of the parties is to be ascertained from the document itself. When,

however, an ambiguity exists, parol evidence is admissible to explain or clarify or resolve the ambiguity, irrespective of whether the ambiguity is patent, created by the language of the instrument, or latent, created by extrinsic or collateral circumstances. A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more then one sense. While unambiguous contracts are interpreted by the court as a matter of law, ambiguous writings are interpreted by the finder of fact."), *accord Bd. Of Education v. Utica Mut. Ins. Co.,* 172 N.J. 300, 798 A.2d 605, 610 (2002) (citations omitted).

extended coverage endorsement does not apply.

Appellants' brief at 18, 11 and 24, respectively.[8]

¶ 17 Appellants assert that even if the term "acquire" can broadly be read to include a right of usage, this right of usage vested with the entity Budtel–Comptel, not with Comptel individually. Secondly, they claim the trial court erred in reading the Agreement by holding Comptel had "acquired" the Budtel warehouse thereby triggering coverage under the newly acquired property clause. *See* Complaint, Exb. A. *supra,* Common Policy Declarations ("You may extend the insurance provided by this Coverage Form to apply to: **(b)** Buildings you acquire at locations, other than the described premises.").

¶ 18 Assuming for the sake of argument the trial court was correct in concluding the Agreement provided that the Budtel warehouse was "acquired," the trial court erred in holding that the *entity* that acquired the Budtel warehouse was Comptel. The Agreement expressly and unambiguously provides that "the new entity [Budtel–Comptel] will acquire the right to use." Record, Complaint, Exb. B, Joint Venture Agreement Between Budtel Associates, LP and Comptel Corporation. The Agreement further provides unambiguously "that Budtel Associates, LP and Comptel Corporation shall retain their individual identity, corporate officers and employees." *Id.* The plain language of the Agreement itself, therefore, demonstrates that parties did not agree to vest any right of use in Comptel itself but, rather, in Budtel–Comptel. *See Temple Univ. of the Commonwealth Sys. of Higher Educ. v. Allegheny Health Educ. and Research*

*Found.,* 456 Pa.Super. 314, 690 A.2d 712, 714–715 (1997) ("[W]hen a contract's meaning is clear and unequivocal, its meaning must be determined by its contents alone. It speaks for itself and a meaning cannot be given to it other than that expressed."), *quoting Steuart v. McChesney,* 498 Pa. 45, 444 A.2d 659, 661 (1982).

¶ 19 Furthermore, the record reveals Budtel–Comptel was registered as a business entity under the New Jersey Limited Liability Company Act, N.J. Stat. Ann. § 42:2B–1 *et. seq.* Record, Defendant's Continental Casualty Insurance Company and CNS Insurance Companies' Response to Plaintiff's Motion for Declaratory Relief, Exb. F., Certificate of Formation of Budtel Comptel LLC. This Act provides that a member of a limited liability company has no interest in the specific property of the limited liability company; Pennsylvania's statutory scheme contains a similar provision. N.J. Stat. Ann. § 42:2B–43, **Company interest, personal property,** *accord* 15 Pa.C.S.A. § 8923, **Property.** As a matter of law, therefore, Comptel (as a member) did not own Budtel–Comptel's (the limited liability company's) right to use the Budtel warehouse by default.

¶ 20 Inasmuch as the Agreement unambiguously provides Budtel–Comptel would have the right to use the Budtel warehouse, not Comptel, and inasmuch as Comptel did not obtain ownership over Budtel–Comptel's right to use the warehouse as a matter of law, the trial court's conclusion is erroneous. The remaining two issues raised by appellants are rendered moot by virtue of our resolution of the first two issues considered.

---

**8.** As stated in footnote three *supra,* in their Statement of Questions Presented appellants phrase their issues in a somewhat verbose manner that does not correspond with their argument headings. Consequently, we have decided to rely on the argument headings as appellants' phrasing of the issues is inadequate to foreshadow the arguments to come.

¶ 21 Order of April 13, 2005 reversed. Case remanded for proceedings consistent with this Opinion.

¶ 22 Jurisdiction relinquished.