J-A10007-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JAMI L. HUBER, ESQUIRE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| SUSAN M. NOONAN, ESQUIRE | : | |
| | : | |
| Appellant | : | No. 3706 EDA 2017 |

Appeal from the Order Dated October 13, 2017
In the Court of Common Pleas of Lehigh County
Civil Division at No(s): 2017-0830

BEFORE:   GANTMAN, P.J., McLAUGHLIN, J., and RANSOM*, J.

MEMORANDUM BY GANTMAN, P.J.:               **FILED OCTOBER 23, 2018**

Appellant, Susan M. Noonan, Esquire, appeals from the order entered in the Lehigh County Court of Common Pleas, which granted in part and denied in part her motion to quash subpoena/motion for a protective order regarding the subpoena of Appellee, Jami L. Huber, Esquire, to produce documents of Appellant's former client, relevant to estate litigation pending in Florida.  We affirm.

The pertinent facts and procedural history of this case are as follows. Appellant is a Pennsylvania attorney.  On January 24, 1995, Appellant assisted Clara Anna Claitor ("Decedent") with the preparation of estate-planning documents, including a trust.  Decedent was a Pennsylvania resident at that time.  On May 5, 2015, Decedent sent Appellant a termination letter, stating she no longer wanted Appellant's law firm to represent her.  Shortly after,

_____
* Retired Senior Judge assigned to the Superior Court.

Decedent relocated to Florida to live with her great-niece, Karen Nannette Woods. On June 15, 2015, while living in Florida and with the assistance of a Florida attorney, Decedent revised her estate plan, including the trust. Significantly, Ms. Woods is the sole beneficiary under Decedent's revised trust. Decedent died in Florida on April 11, 2016.

On November 23, 2016, Decedent's relatives, William R. Irey, Dianne L. McDonald, Susanne Buff, and Steven Irey, filed a complaint in the probate division of Osceola County, Florida, against Ms. Woods, individually and as beneficiary of the revised trust, and the co-trustees, asserting claims of Decedent's lack of testamentary capacity, undue influence, and tortious interference, in an effort to set aside the revised trust.[1] The plaintiffs claimed they were beneficiaries under Decedent's Pennsylvania testamentary documents which Appellant had drafted. Appellee represents the plaintiffs in the Florida litigation.

On March 21, 2017, Appellee filed a subpoena in the Lehigh County Court of Common Pleas, for the production of Appellant's entire estate file on Decedent. Specifically, the subpoena sought:

**Documents to be Produced:**

1. [Appellant's] entire file for [Decedent], including but not limited to copies of all estate planning documents contained therein, including Wills, Trusts, deeds, powers of attorney, advance directives, notes, memorandum, transcripts, correspondence, deeds, e-mails, texts, billing records, pictures and/or audio and video tape recordings.

---

[1] **See McDonald v. Woods**, No. 16CP771TR (Fla. 9th Cir. Ct. Nov. 23, 2016).

2. Any and all documents relating to any communications between [Appellant] (or [Appellant's] firm) and [Decedent].

3. Any and all documents relating to any communications between [Appellant] (or [Appellant's] firm) or [Decedent] and any and all of [Decedent's] doctors, attorneys, care givers, health care providers, friends, and/or acquaintances, including Defendants.

4. Any and all documents relating to any communications between [Appellant] (or [Appellant's] firm) or [Decedent] and any and all of [Decedent's] banks and brokerage firm.

5. Any and all documents relating to any communications between [Appellant] (or [Appellant's] firm) or [Decedent] and/or any other family member of [Decedent].

6. All documents, including all communication, records or correspondence, in [Appellant's] file or which may have been exchanged with any other individual concerning [Decedent], individually or as trustee of any trust, or any other individual(s) acting [on] [Decedent's] behalf.

7. Any and all documents concerning preparation, execution or validity of any testamentary instruments or testamentary substitutes for or concerning [Decedent].

8. Any and all documents concerning any office policies or procedures for preparation, execution and/or storage of testamentary documents or substitutes concerning [Decedent].

(Appellee's Subpoena for Production of Documents, filed March 21, 2017, at 10; R.R. at 19a). The subpoena was served on Appellant on April 18, 2017.

On May 8, 2017, Appellant filed a motion to quash subpoena/motion for protective order, claiming, *inter alia*, the documents sought are protected by the attorney/client privilege and/or work product doctrine. The trial court granted Appellant's motion on June 19, 2017, based on Appellee's failure to

respond in a timely manner. On June 23, 2017, Appellee filed a motion for reconsideration and leave to file an answer *nunc pro tunc*. On July 10, 2017, the court granted reconsideration, vacated its June 19, 2017 order, and scheduled a hearing.

The court held oral argument on September 6, 2017. The court framed the issue as whether an attorney who prepared estate planning documents for a client can be compelled to turn over her client's file during a will contest after the client's death. The parties initially discussed whether Pennsylvania or Florida law applied to the issue under a choice of law analysis. Appellant claimed, *inter alia*, Pennsylvania law applies because the communications between Appellant and Decedent occurred in Pennsylvania while Appellant and Decedent were living in Pennsylvania, and Appellant drafted the relevant estate planning documents in Pennsylvania. Appellant maintained Pennsylvania's attorney/client privilege protects the communications at issue and prohibits her from turning over her former client's file. Appellant claimed the subpoena also sought notes, correspondence, and other memoranda in relation to her representation of Decedent, which are protected by Pennsylvania's work product doctrine.

Appellee argued, *inter alia*, Florida law should control the outcome of this dispute because Decedent died in Florida, Decedent's estate was probated in Florida, litigation concerning Decedent's estate is pending in Florida, and the situs of the assets at issue is in Florida. Appellee explained the documents

sought are discoverable under Florida law because Florida has a "testamentary exception" to the attorney/client privilege.

On October 13, 2017, the trial court granted Appellant's motion to quash subpoena/motion for a protective order in part, concerning any portion of the subpoena requesting "opinion work product"; the court denied Appellant's motion in all other respects. Appellant timely filed a notice of appeal on November 10, 2017. On December 8, 2017, the trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b); Appellant timely complied on December 13, 2017.

Appellant raises three issues for our review:

> WHETHER THE TRIAL COURT FAILED TO PROPERLY FOLLOW PENNSYLVANIA LAW GOVERNING THE CHOICE OF LAW ANALYSIS IN DISPUTES INVOLVING CLAIMS OF PRIVILEGE, WHERE PENNSYLVANIA LAW REQUIRES A COURT TO APPLY THE LAW OF THE STATE WITH THE GREATER PUBLIC POLICY INTEREST IN PROTECTING THE COMMUNICATIONS AT ISSUE, RATHER THAN THE GREATER INTEREST IN THE LITIGATION AS A WHOLE?
>
> WHETHER THE TRIAL COURT ERRED IN DETERMINING THAT FLORIDA LAW APPLIED TO THE ISSUE OF WHETHER THE CONTENTS OF [APPELLANT'S] ESTATE PLANNING FILE, FOR HER FORMER CLIENT [DECEDENT], WAS PROTECTED FROM DISCLOSURE BY THE ATTORNEY-CLIENT PRIVILEGE, AS PENNSYLVANIA IS THE STATE WITH THE GREATER POLICY INTEREST IN APPLYING ITS ATTORNEY-CLIENT PRIVILEGE LAW?
>
> WHETHER THE TRIAL COURT ERRED BY ORDERING [APPELLANT] TO PRODUCE THE ESTATE PLANNING FILE FOR HER FORMER CLIENT, [DECEDENT], AS SUCH IS PROTECTED BY THE ATTORNEY-CLIENT PRIVILEGE, AND THERE IS NO TESTAMENTARY EXCEPTION TO THE PRIVILEGE UNDER PENNSYLVANIA LAW?

(Appellant's Brief at 4).[2]

Preliminarily: "[T]he appealability of an order directly implicates the jurisdiction of the court asked to review the order." **Knopick v. Boyle**, 189 A.3d 432, 436 (Pa.Super. 2018) (internal citation omitted). "Accordingly, this Court has the power to inquire at any time, *sua sponte*, whether an order is appealable." **Id.** "If the discovery order requires the appealing party to produce materials which the appealing party has asserted are privileged, [Pa.R.A.P.] 313 applies, and we accept jurisdiction." **Id.** at 437. **See also** Pa.R.A.P. 313 (defining collateral order); **Estate of Paterno v. National Collegiate Athletic Association (NCAA)**, 168 A.3d 187 (Pa.Super. 2017) (explaining general rule that discovery orders compelling disclosure of potentially confidential and privileged materials are immediately appealable as collateral to principal action); **Berkeyheiser v. A–Plus Investigations, Inc.**, 936 A.2d 1117, 1126 (Pa.Super. 2007) (recognizing that appellant's "colorable claim" of attorney/client privilege and work product doctrine can

---

[2] In a footnote of her brief, Appellant mentions the court's application of Florida law to the work product doctrine and refers to that portion of the court's order directing Appellant to produce "fact work product." Appellant, however, did not specify that claim in her Rule 1925(b) statement, so any issue of what constitutes "fact" work product is waived for purposes of this appeal. **See Greater Erie Indus. Development Corp. v. Presque Isle Downs, Inc.**, 88 A.3d 222 (Pa.Super. 2014) (*en banc*) (holding failure to comply with Rule 1925(b) order in civil cases constitutes automatic waiver of issues raised on appeal); **Lineberger v. Wyeth**, 894 A.2d 141 (Pa.Super. 2006) (explaining appellant's failure to include or specify issue in Rule 1925(b) statement waives that issue for purposes of appellate review).

establish propriety of immediate appellate review).

Instantly, Appellant presents a colorable claim of privilege concerning the documents requested in Appellee's subpoena, to satisfy the collateral order doctrine. Thus, our jurisdiction is proper; and we can reach the merits of Appellant's issues. *See* Pa.R.A.P. 313; *Knopick, supra*; *Estate of Paterno, supra*; *Berkeyheiser, supra*.

For purposes of disposition, we combine Appellant's issues. Appellant argues there is a "true conflict" between Pennsylvania and Florida law concerning application of the attorney/client privilege to this discovery dispute because Florida has a statutory broad testamentary exception to the attorney/client privilege whereas Pennsylvania does not. Appellant asserts the trial court misdirected the choice of law analysis, because it determined Florida had the greater policy interest in the underlying estate litigation, instead of focusing on which state had the greater interest concerning the limited issue of attorney/client privilege. Appellant asserts Florida's interest in the particular matter at hand (attorney/client privilege) is minimal and exceedingly attenuated. Appellant stresses that Pennsylvania's strong interest in protecting attorney/client communications made between Pennsylvania attorneys and their Pennsylvania clients within this Commonwealth requires application of Pennsylvania law. Appellant highlights that Pennsylvania is: the state where the subpoena was served and all discovery efforts are directed against Appellant; the situs of the entire

attorney/client relationship in question, between Appellant and Decedent; and where all communications between Appellant and Decedent took place. Appellant concludes Pennsylvania law applies to this discovery dispute, the requested documents are protected under the Pennsylvania attorney/client privilege, and this Court must reverse the portion of the court's order denying her motion to quash subpoena/motion for a protective order. We disagree.

"Whether [the] attorney-client privilege protects a particular communication is a question of law. Our standard of review is *de novo* and our scope of review is plenary." **Estate of Paterno, supra** at 194 (internal citations omitted). In conducting a choice of law analysis, the first step "is to determine whether a conflict exists between the laws of the competing states." **Budtel Associates, LP v. Continental Cas. Co.**, 915 A.2d 640, 643 (Pa.Super. 2006). If the laws of the competing jurisdictions do not conflict, then further analysis is unnecessary, and we apply Pennsylvania law. **Id.** at 643-45. "[A conflict] exists if there are relevant differences between the laws." **McDonald v. Whitewater Challengers, Inc.**, 116 A.3d 99, 106 (Pa. Super. 2015), *appeal denied*, 634 Pa. 749, 130 A.3d 1291 (2015). If the laws of the competing states do conflict, however, then the second step is to analyze the governmental interests underlying each of the conflicting laws. **Griffith v. United Air Lines, Inc.**, 416 Pa. 1, 203 A.2d 796 (1964).[3] "The

---

[3] In **Griffith**, our Supreme Court abandoned the earlier "place of the injury" rule, providing that the laws of the state in which the injury or incident

merit of such a rule is that it gives to the place having the most interest in the problem paramount control over the legal issues arising out of a particular context and thereby allows the forum to apply the policy of the jurisdiction most intimately concerned with the outcome of the particular litigation." ***Id.*** at 22, 203 A.2d at 806 (internal citation and quotation marks omitted). This choice-of-law framework applies in discovery disputes implicating claims of privilege and in estate cases. ***See Carbis Walker, LLP v. Hill, Barth and King, LLC***, 930 A.2d 573, 578 (Pa.Super. 2007); ***In re Agostini's Estate***, 457 A.2d 861, 871 (Pa.Super. 1983).

In conducting the interest analysis, the court must decide which state has the most significant relationship or contacts with the issue before the court. ***Budtel, supra*** at 643. This analysis does not involve simply counting the number of contacts each state has with the matter at hand. ***Cipolla v. Shaposka***, 439 Pa. 563, 566, 267 A.2d 854, 856 (1970). Rather, "[t]he weight of a particular state's contacts must be measured on a qualitative rather than quantitative scale." ***Id.*** "[T]his means we must determine which state…has demonstrated, by reason of its policies and their connection and relevance to the matter in dispute, a priority of interest in the application of its rule of law." ***In re Agostini's Estate, supra*** at 871.

Pennsylvania law defines the attorney/client privilege by statute:

> **§ 5928. Confidential communications to**

---

occurred governed the dispute, in favor of a more flexible approach. ***See id.*** at 21, 203 A.2d at 805.

**attorney**

> In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to [her] by [her] client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client.

42 Pa.C.S.A. § 5928. The purpose of the attorney/client privilege is to "foster a confidence between attorney and client that will lead to a trusting and open dialogue." *Gocial v. Independence Blue Cross*, 827 A.2d 1216, 1222 (Pa.Super. 2003). "While the attorney-client privilege is statutorily mandated, it has a number of requirements that must be satisfied in order to trigger its protections. First and foremost is the rule that the privilege applies only to confidential communications made by the client to the attorney in connection with providing legal services." *Id.* In some instances, *in camera review* may be required to decide whether documents requested in discovery are protected by the attorney/client privilege. *Id.* at 1223.

Florida law codifies its attorney/client privilege, in pertinent part, as follows:

**90.502. Lawyer-client privilege**

(1) For purposes of this section:

\* \* \*

(c) A communication between lawyer and client is "confidential" if it is not intended to be disclosed to third persons other than:

1. Those to whom disclosure is in furtherance of the rendition of legal services to the client.

    2. Those reasonably necessary for the transmission of the communication.

(2) A client has a privilege to refuse to disclose, and to prevent any other person from disclosing, the contents of confidential communications when such other person learned of the communications because they were made in the rendition of legal services to the client.

       *    *    *

(4) There is no lawyer-client privilege under this section when:

       *    *    *

    (b) A communication is relevant to an issue between parties who claim through the same deceased client.

F.S.A. § 90.502(1)(c), (2), (4)(b). The explanatory note to Section 90.502(4)(b) provides, in relevant part:

**Subsection (4)** This subsection codifies several well-established exceptions to the privilege:

       *    *    *

    (b) When multiple parties claim through the same decedent, as in a will contest or a challenge to testate or intestate succession, each party claims to best represent the interests of the deceased. To allow any or all parties to invoke the lawyer-client privilege prevents the swift resolution of the conflict and frustrates the public policy of expeditiously distributing estates in accordance with the testator's wishes. …

F.S.A. § 90.502(4)(b), *Note*. ***See also Caputo v. Nouskhajian***, 871 So.2d 266 (Fla. 5th DCA 2004), *appeal denied*, ___ Fla. ___, 884 So.2d 23 (2004) (explaining Section 90.502(4)(b) permits discovery of communications

otherwise protected by attorney/client privilege when multiple opposing parties claim through same deceased client).

Instantly, the trial court conducted a choice of law analysis to decide whether Pennsylvania or Florida law governed application of the attorney/client privilege to this discovery dispute in the Florida estate case, as follows:

### A. WHETHER FLORIDA LAW OR PENNSYLVANIA LAW IS CONTROLLING?

This matter has been brought in a Pennsylvania court. Therefore, Pennsylvania choice of laws analysis provides the framework to decide whether Pennsylvania or Florida law applies. …

First, the court must determine whether there is an actual conflict between the potentially applicable laws. Here, an actual conflict exists between the laws of Pennsylvania and Florida as it relates to this discovery issue. Florida has a statute and ample supporting case law that recognize a broad testamentary exception to the attorney-client privilege. Pennsylvania, on the other hand, has no statutory authority that provides a testamentary exception to the attorney-client privilege. Further, there is no Pennsylvania appellate authority addressing the issue. A handful of Pennsylvania Court of Common Pleas decisions have discussed a limited testamentary exception, but these decisions have been much more limited than the broad Florida rule, which eliminates all of the attorney-client protections in a trust dispute. Based on the above analysis, it appears that there are significant differences between the laws of Pennsylvania and Florida regarding this discovery issue.

The second step of the inquiry is that, if a true conflict exists, courts must conduct an "interest analysis" to determine which state has the greater interest in the outcome of the dispute. In making this determination, the court must

identify the relevant contacts that each state has with the instant dispute.

Here, it appears that Florida is the state with the largest interest in the outcome of the underlying litigation. Florida is where the underlying litigation is pending; Florida is where the Defendants in that litigation reside; Florida is the situs of the trusts at issue in the underlying litigation; and the Circuit Court in and for Osceola County, Florida probate division is where the ultimate outcome of the underlying case will be decided.

Pennsylvania's interest involves promoting confidential communications between a Pennsylvania client and a Pennsylvania attorney made for the purpose of obtaining legal advice in Pennsylvania concerning Pennsylvania law.

On balance, we find that Florida is the state most intimately concerned with the outcome of the case. Accordingly, Florida law must control the disposition of the issue of whether [Appellant's] files can be withheld on the basis of privilege.

**B. WHETHER [APPELLANT] MUST PRODUCE HER FULL AND COMPLETE ESTATE PLANNING FILE FOR DECEDENT TO [APPELLEE]?**

Florida has a statute that recognizes a broad testamentary exception to the attorney-client privilege. **See** F.S. § 90.502(4)(b). … To allow any or all parties to invoke the lawyer-client privilege prevents the swift resolution of the conflict and frustrates the public policy of expeditiously distributing estates in accordance with the testator's wishes. The overriding concern that a testator's intent is effectuated and the estate is administered in accordance therewith supersedes the confidentiality otherwise afforded. Florida law presumes that the testator would wish to have…her intent known if the alternative might result in a wrongful disposition of [her] estate.

The issues in this case include a claim for undue influence as to the last known testamentary documents purportedly executed by Decedent, after Decedent was moved to Florida by her great-niece. In order to establish standing to contest

> the current will offered for probate, the plaintiffs have alleged that the prior estate planning documents drafted by [Appellant] provide that they are beneficiaries thereunder and pursuant to the doctrine of dependent relevant revocation, if the current estate planning documents were set aside based on undue influence or other reason, the prior documents would be revived as the law abhors intestacy. While [the] Plaintiffs seek the prior documents to establish their standing to contest Decedent's last known Will and Trust, they also seek to have the testimony and file of [Appellant] to show Decedent's longstanding intent to provide for them. The [P]laintiffs in the Florida litigation also believe that [Appellant's] file will prove the factors which establish undue influence, such as the Defendant's actions in cloistering [Decedent] from those she trusted.
>
> We find that [Appellant's] estate planning file for Decedent must be provided to [Appellee] with some limitations. …

(Opinion in Support of Order Granting in part and Denying in part Appellant's Motion to Quash Subpoena/Motion for a Protective Order, filed 10/13/17, at 4-7; R.R. at 215a-218a) (most internal citations omitted).

We agree a conflict exists between Florida and Pennsylvania law on this privilege and approve of the trial court's choice of law analysis. The primary action is the estate case pending in Florida. Pennsylvania is not the forum state for that litigation, and Florida has the principal interest in its resolution. On the other hand, Pennsylvania has no interest in the outcome of the Florida case and is involved due only to a subpoena derivative of the Florida case. Thus, we cannot allow Pennsylvania indirectly to control the Florida estate litigation and defer to Florida law, which has seen fit to adapt to the particular circumstances at issue, by way of its testamentary exception to the attorney/client privilege.

Consequently, under these circumstances, we conclude Florida is the state with more significant contacts and greater concern for the primary and principal litigation, so Florida law should also control the matter of attorney-client privilege. **See *Griffith, supra*; *Carbis Walker, supra*.** Therefore, Appellant's claims merit no relief. Accordingly, we affirm.

Order affirmed.

Judge Ransom did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/23/18